## JUDITH LEWIS *v.* DONALD LEWIS
### (12095)

FOTI, LAVERY and SCHALLER, Js.

Argued June 6—decision released August 23, 1994

*Michael S. McKenna,* with whom, on the brief, were *Jeffrey B. Sienkiewicz* and *Dolores R. Schiesel,* for the appellant (defendant).

*Kenneth B. Caisse,* for the appellee (plaintiff).

LAVERY, J. In this appeal, we are called on to consider the dischargeability in bankruptcy of debts owed to a former spouse by the bankrupt defendant. The parties were divorced on August 30, 1990, ending a two year marriage. In the dissolution decree, the trial court stated that both parties were employed and self-supporting and, therefore, ordered no alimony to either party. The court did, however, order the defendant to pay the plaintiff $50,000. The defendant did not pay the full amount. The trial court found that the defendant owed $38,316 on January 10, 1992, when the plaintiff filed the latest in a long series of contempt motions and capiases.

The defendant filed for chapter 7 bankruptcy protection on February 18, 1992. He scheduled the debt owed to his wife as an unsecured debt, without describing its nature.[1] On March 4, 1992, the debtor defendant commenced an adversary proceeding in the bankruptcy court alleging that his debt to his wife was dischargeable.[2] Both parties assert that the bankruptcy court,

---

[1] Without explanation, the debt listed as owed to his wife is $75,000. Immediately prior to the filing of the bankruptcy petition, the debt was found by the trial court to be $38,316.

[2] Because the debtor brought this adversary proceeding to have the debt ruled dischargeable, we can presume that the bankruptcy court had indi-

Krechevsky, J., referred this matter to the Superior Court during a pretrial conference. After the pleadings were filed, the defendant did not pursue the matter. The adversary proceeding was dismissed for failure to prosecute on April 28, 1994.

On March 27, 1992, the trustee in bankruptcy appointed to the defendant's case reported that the defendant lacked assets to pay any of the unsecured creditors. The defendant received a chapter 7 discharge from bankruptcy on May 26, 1992.

The plaintiff moved to have the defendant found in contempt for failing to comply with the dissolution decree on August 13, 1992. In his defense, the defendant asserted that the debt owed to the plaintiff was dischargeable and had been discharged on May 26, 1992. The trial court heard argument on whether the debt was dischargeable under 11 U.S.C. § 523 (a) (5).[3] The trial court ruled on January 6, 1993, that the debt was nondischargeable and ordered further proceedings to facilitate collection. The defendant appeals the ruling.

Due to the close interaction between the state proceedings and bankruptcy action in this case, we must first consider whether this case is properly before us. We conclude that it is for the following reasons. First,

cated in some manner that the debt would be presumed nondischargeable alimony or support or maintenance of a former spouse pursuant to 11 U.S.C. § 523 (a) (5).

[3] Title 11 of the United States Code, § 523 (a), provides in pertinent part: "A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . (5) to a . . . former spouse . . . for alimony to, maintenance for, or support of such spouse . . . in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise . . . or (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support . . . ."

our actions and the actions of the trial court are not barred by an automatic stay. See 11 U.S.C. § 362 (a).[4] The automatic stay imposed at the commencement of a bankruptcy proceeding terminates upon the debtor's discharge. 11 U.S.C. § 362 (c) (2) (C).[5] Thus, the stay in this case ended on May 26, 1992.

Second, this action is not moot. Although the adversary proceeding in the bankruptcy court was dismissed in April, 1994, the ruling that is the subject of this appeal arose in the course of a state proceeding. The issue of the dischargeability of the debt arose in the plaintiff's contempt proceeding when the defendant attempted to avoid having to pay it by claiming that it had been discharged. In essence, the claim of discharge was a defense. Thus, the issue was properly before the trial court and remained unresolved after the parallel action in federal court had ended.

Third, the issue of dischargeability of the debt owed to the plaintiff was properly before the trial court. "State courts of general jurisdiction have the power to decide cases involving federal . . . rights where . . . neither the Constitution nor statute withdraws

---

[4] Title 11 of the United States Code, § 362 (a), provides in pertinent part: "[A] petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of—(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title . . . (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title . . . ."

[5] Title 11 of the United States Code, § 362 (c) (2), provides: "[T]he stay of any other act under subsection (a) of this section continues until the earliest of (A) the time the case is closed; (B) the time the case is dismissed; or (C) if the case is a case under chapter 7 of this title concerning an individual . . . the time a discharge is granted or denied."

such jurisdiction. *Boston Stock Exchange* v. *State Tax Commission,* 429 U.S. 318, 319 n.3, 97 S. Ct. 599, 50 L. Ed. 2d 514 (1977)." *In re Aurre,* 60 Bankr. 621, 624 (S.D.N.Y. 1986). In this instance, jurisdiction has not been withdrawn from state courts. 28 U.S.C. § 1334 (b).[6] "Section 523 (c) of the [Bankruptcy] Code provides for a limited exception to this concurrent jurisdiction for questions of dischargeability concerning § 523 (a) (2) (fraud or a false financial statement), § 523 (a) (4) (fraud by a fiduciary, embezzlement or larceny) and § 523 (a) (6) (willful and malicious injury). Therefore, all dischargeability issues other than those concerning § 523 (a) (2), (4) and (6) may be determined by a nonbankruptcy court." *Matter of Carter,* 38 Bankr. 636, 638 n.5 (D. Conn. 1984); see also *Matter of Brady, Texas, Municipal Gas Corp.,* 936 F.2d 212, 218 (5th Cir.), cert. denied sub nom. *Sanders* v. *Brady,* 502 U.S. 1013, 112 S. Ct. 657, 116 L. Ed. 2d 748 (1991); *In re Rosenbaum,* 150 Bankr. 994, 996 and n.2 (E.D. Tenn. 1993); *In re Balvich,* 135 Bankr. 327, 330 (N.D. Ind. 1991).

Fourth, the debtor's discharge, which occurred prior to this action in state court, did not resolve the dischargeability of this debt. "Unlike dischargeability questions based on § 523 (a) (2), (4) & (6), where debts are automatically discharged unless the creditor asks the bankruptcy court to make a determination of nondischargeability, a debtor's obligation to a former spouse or child is either discharged or not, pursuant to § 523 (a) (5), based upon the nature of that obligation *regardless of whether or not the bankruptcy court has been asked to pass upon the issue.* See 11 U.S.C.

---

[6] Title 28 of the United States Code, § 1334 (b), provides in pertinent part: "Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."

§ 523 (c). The question of dischargeability is, thus, preserved and, should there be any dispute, may be determined by the state courts in connection with proceedings to enforce the obligation." (Emphasis added.) *In re Balvich,* supra, 135 Bankr. 330; see also *In re Aurre,* supra, 60 Bankr. 624 (no action by bankruptcy court required to trigger § 523 [a] [5] exception).[7] Thus, even though the debtor was discharged without a prior determination of the dischargeability of the debt to his former spouse, the question was preserved for adjudication, and was properly before the trial court in the context of proceedings to collect the debt.

The issue on appeal is whether the trial court correctly characterized the $50,000 debt that the defendant owed to the plaintiff as nondischargeable. Section 523 (a) (5) of the Bankruptcy Code denies debtors discharges from debts owed to former spouses for alimony, maintenance or support.[8] In contrast, property settlements to former spouses are dischargeable. *Matter of Ammirato,* 74 Bankr. 605, 607 (D. Conn. 1987). The determination of whether a debt is dischargeable is made pursuant to federal bankruptcy law. *Forsdick* v. *Turgeon,* 812 F.2d 801, 802 (2d Cir. 1987); *In re Calhoun,* 715 F.2d 1103, 1107 (6th Cir. 1983); *In re Silberfein,* 138 Bankr. 778, 780 (S.D.N.Y. 1992).

"Courts have a list of factors to examine in determining whether a particular transaction constitutes a nondischargeable duty such as alimony, maintenance or support, or whether it is a property settlement and,

---

[7] The preservation of this question contrasts with the situation in which a debtor characterizes a debt to a former spouse as a dischargeable property settlement. If the creditor does not challenge that characterization in an adversary proceeding prior to discharge, the injunction invoked by discharge prevents a later determination of dischargeability. See *Jones* v. *Jones,* 38 Bankr. 690, 691 (N.D. Ohio 1983). In this case, the defendant did not characterize the debt to his former spouse as dischargeable.

[8] See footnote 3.

therefore, dischargeable. See *Freyer* v. *Freyer,* 71 Bankr. 912, 918 (S.D.N.Y. 1987), and cases cited therein. The following factors are taken into account: (1) whether the obligation terminates on the death or remarriage of the debtor's spouse; (2) whether the payments appear to balance disparate income; (3) whether the payments are made to a third party or the ex-spouse; (4) whether the obligation terminates at the end of a specified event (i.e., children are out of school, debt is satisfied, etc.); and (5) what was the intent of the parties. See *Matter of Ammirato,* supra, [74 Bankr. 608]." *Lesser* v. *Lesser,* 16 Conn. App. 513, 516–17, 548 A.2d 6, cert. denied, 210 Conn. 802, 553 A.2d 615 (1988).

After reciting the relevant factors, the trial court found as a fact that the $50,000 debt was nondischargeable alimony, maintenance or support. On appeal, we must determine whether the trial court's factual findings are clearly erroneous in view of the evidence and pleadings in the whole record. Practice Book § 4061. Our review persuades us that the trial court's findings are not clearly erroneous.

The trial court observed that the purpose of a property settlement is to unscramble property ownership, giving to each spouse an equitable share. Here, the trial court found that there was no property ownership to unscramble. The dissolution decree neither required any property to be sold nor tied payment of the $50,000 to the disposition of any particular asset. Thus, the evidence suggests that the $50,000 was not a property settlement.

The trial court noted that the dissolution decree stated that "no alimony is to be awarded to either party." The trial court stated that this assertion was belied by the intent of the parties as evidenced during a hearing on the proposed decree. The following colloquy occurred at the hearing:

"Attorney Foley: Mrs. Lewis, do you understand that if you don't ask for any periodic alimony, *except the $50,000,* that you will not at any time in the future be permitted to return to court and seek alimony from him?

"Mrs. Lewis: Yes.

"Attorney Foley: Do you understand that?

"Mrs. Lewis: Yes."

Thus, although the decree states flatly that no alimony will be paid, that colloquy suggests that the plaintiff intended that the $50,000 payment was in the nature of alimony.

In a further attempt to divine the intent of the parties, the trial court reviewed the parties' prenuptial agreement. We note that the prenuptial agreement was not part of the dissolution decree, and was not considered by the court that rendered the parties' dissolution. The trial court's use of the agreement, however, was appropriate in the contempt proceeding. Here, the trial court was charged with searching for the intent of the parties at the time of their divorce. See id. The dissolution decree was at best ambiguous, because it both asserted that no alimony would be paid and required a $50,000 payment without characterization or linkage to some specific property to be divided. The prenuptial agreement revealed the parties' intent regarding alimony upon their divorce at the time the prenuptial agreement was made. To the extent that the agreement reveals the parties' intent, the trial court properly considered it. *In re Brody,* 3 F.3d 35, 38 (2d Cir. 1993) ("[a]ll evidence, direct or circumstantial, which tends to illuminate the parties' subjective intent is relevant"); *Matter of Benich,* 811 F.2d 943, 945 (5th Cir. 1987) (court may consider extrinsic evidence in determining

dischargeability); *In re Yeates,* 807 F.2d 874, 878 (10th Cir. 1986) (written agreement is persuasive evidence of intent); *Shaver* v. *Shaver,* 736 F.2d 1314, 1316 (9th Cir. 1984) ("[i]n determining [dischargeability] the court must look beyond the language of the decree to the intent of the parties").

The prenuptial agreement provided that the plaintiff had the right to periodic alimony for as many years as the parties were married, at a rate of $10,000 per year. The plaintiff also had a right to receive a building lot. Thus, both parties envisioned alimony payments when they signed the prenuptial agreement. When they were actually divorced, after two years of marriage, the parties agreed that the plaintiff would receive $50,000, which was more than the $20,000 in alimony envisioned in the prenuptial agreement, but would not receive a building lot. Thus, the dissolution decree can be harmonized with the prenuptial agreement, and the intent evidenced in the latter can be used to construe the former. Therefore, the evidence supports the trial court's finding that the parties intended the $50,000 to be alimony.

The trial court also observed that at the time of the dissolution, the plaintiff owned no house or car and used those provided by the defendant. The dissolution decree permitted the plaintiff to use the defendant's house and car until the $50,000 payment was made. The trial court interpreted this link between use of the house and car and the payment as demonstrating that the payment was intended to provide a house and transportation for the plaintiff. As both are necessities of life, the trial court concluded that the payment was in the nature of alimony, support or maintenance rather than property settlement.

In sum, the evidence in the record supports the trial court's interpretation of the $50,000 payment as ali-

mony, support or maintenance. Therefore, the trial court's conclusion that the debt is nondischargeable is not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.