[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: PLAINTIFF'S MOTION TO MODIFYJUDGMENT (NO. 115)
The plaintiff former wife brings this motion to modify a judgment entered September 15, 1988, which provided for $1 per year alimony modifiable only by the wife, if the defendant failed to pay certain existing joint obligations and indemnify her and save her harmless from them. She claims that since the defendant failed to perform his obligations under the decree, she is now entitled to an upward modification of alimony.
The defendant basically concedes that he stopped paying the obligations. He claims that he obtained a discharge in bankruptcy which relieves him of all liability to the plaintiff. At the hearing before this court, both parties testified and submitted financial affidavits and memoranda of law. A number of documentary materials were introduced into evidence, and a friend of the defendant testified. The court has reviewed the decree entered by Judge Cramer and the written stipulation signed by the parties' counsel upon which it was based, which are part of the court file.
 I
From the evidence, I find the following. The couple's CT Page 7615 marriage was dissolved September 15, 1988. The parties and their counsel were present and filed financial affidavits. At that time, the defendant was operating a fishing boat business using the parties' jointly-owned boat. The boat was encumbered by two loans, one for $70,000 to Key Financial (Key); the other for $25,000 to Russell Hicks (Hicks). The Hicks loan was also secured by a second mortgage on the marital dwelling, which by the terms of the decree was assigned to the wife. At the same time, the boat and fishing business were assigned to the husband.
The decree provided, in pertinent part, as follows.
 And it is ordered that the defendant shall be responsible for payment of the second mortgage in favor of Russell Hicks in the approximate amount of $28,000 and shall indemnify and hold the plaintiff harmless therefrom.
 And it is ordered that the defendant shall pay to the plaintiff as periodic alimony the sum of One ($1.00) Dollar per year to terminate upon such time as the defendant satisfies the Hicks mortgage and is able to record a release of mortgage from Russell Hicks. During the term of periodic alimony its amount shall be subject to modification only in the event that the defendant does not fulfill his obligation to indemnify the plaintiff with respect to said mortgage or in the event the defendant does not pay any of the debts associated with his business and creditors thereof who bring any claims against the plaintiff. In either event the amount of alimony shall be subject to modification by the court.
 And it is ordered that should Russell Hicks agree to a modification of the terms of the existing second mortgage, the plaintiff shall execute a modification of the existing mortgage for a term not to exceed ten (10) years from the date of this judgment. In such event the defendant shall continue to CT Page 7616 be responsible for payment of such mortgage and to indemnify and hold the plaintiff harmless therefrom.
Although the decree does not refer to the written stipulation ultimately filed in court November 30, 1988, it is clear from the colloquy which occurred between the court and counsel that the court relied on the agreement orally recited by counsel in the presence of the parties, and incorporated the pertinent language of the stipulation into the decree verbatim.
At the hearing on September 15, 1988, these colloquies occurred:
. . . .
 THE COURT: $25,000 is also a mortgage on the house.
 MR. BISHOP (Plaintiff's Counsel): Yes, Your Honor. There's a second mortgage, a principal amount of twenty-five (thousand) with interest . . . that mortgage note, by its terms required payment in July of 1987. On a pendente lite basis Mr. Peabody was required to hold [the plaintiff] harmless and pay that. A foreclosure was started. We did have a hearing before the Court, and essentially what happened at that was that [the defendant] agreed that he would deal with the plaintiff in that foreclosure action and protect [the plaintiff] from having to defend that action.
 THE COURT: He pays the second mortgage of $25,000.
. . . .
 THE COURT: Prepare a written stipulation and submit it to me.
. . . .
MR. BISHOP: . . . We've agreed to a dollar CT Page 7617 per year alimony and that that alimony is not subject to modification and unless [the defendant] doesn't honor the obligation to undertake holding Mrs. Peabody harmless with respect to the mortgage and doesn't .. hold her harmless from those business debts . . . .
 MR. O'CONNELL (Defendant's attorney): He doesn't indemnify her.
 MR. BISHOP: So she doesn't have any jeopardy.
 THE COURT: A dollar a year alimony under what circumstances.
 MR. BISHOP: It can only be modified in the event he fails to indemnify and save her harmless from the claim of [Hicks].
. . . .
 MR. O'CONNELL: And it would terminate upon satisfaction of [Hicks'] mortgage and payment of whatever business debts upon which the plaintiff may be exposed.
MR. BISHOP: That's correct, Your Honor.
. . . .
 MR. O'CONNELL: I agree, Your Honor, and I would represent that it is an accurate representation of the agreement, which we've reached here today, what has been spread on the record by Mr. Bishop.
. . . .
 THE COURT: I'll phrase it a dollar a year alimony, which doesn't become payable to her unless he finds it necessary to indemnify her and save her harmless for the payment — nonpayment of the twenty-five thousand dollar mortgage and his business debts. CT Page 7618 Doesn't that cover it?
 MR. O'CONNELL: And which terminates upon his satisfaction of the mortgage and the business debts.
 MR. BISHOP: The idea, Your Honor, is that the only basis on which that dollar a year is to become a substantive amount is that if there's a failure, on Mr. Peabody's part, to take care of the mortgage with Mr. Hicks or to pay the business debts. That's the nature of that agreement with respect to the alimony because the award of the home to Mrs. Peabody, as well as the taking of that second mortgage, is really by way of — of support for her and in the home.
. . . .
 THE COURT: I'll just put in a dollar a year alimony, to be modified only under certain conditions as set forth in a stipulation to be submitted.
. . . .
 THE COURT: Anything you want to add, Mr. O'Connell?
 MR. O'CONNELL: That's a accurate representation, Your Honor. I would represent for the file that — for the record that Mr. Peabody is present in court.
. . . .
 (THE COURT:) There is to be one dollar a year alimony in favor of the wife, and it can be modified only if he finds it necessary to — only if he fails to pay the mortgage of $25,000 or fails to pay his business debts, which will be set forth in a stipulation to be submitted next week by counsel. CT Page 7619
. . . .
 MR. BISHOP: Thank you, Your Honor. For the record, Your Honor, what "might trigger the dollar a year to change is in the disjunctive, not the conjunctive. That is to say, if either of those events occur, the failure to pay the business debts or the failure to pay Mr. Hicks.
THE COURT: I'll incorporate that.
 II
The parties cooperated in obtaining a modification of the Hicks mortgage as also provided for in the judgment. The defendant made the payments on both obligations, with some lapses, for a period of time until late 1994, when he went into default on the Hicks mortgage and Key loan.
The defendant then filed a voluntary petition in bankruptcy on November 23, 1994, in the United States Bankruptcy Court, District of Connecticut at Hartford, and received a discharge of the Hicks and Key obligations. The automatic stay imposed at the commencement of a bankruptcy proceeding terminates upon the debtor's discharge.11 U.S.C. § 362(c)(2)(C). As the discharge was granted March 14, 1995, the stay was terminated on that date, and the plaintiff's motion for alimony modification is properly before this court.
The plaintiff was not listed as a creditor in the defendant's petition nor was her contingent, unliquidated claim scheduled. No adversary proceeding was brought in the bankruptcy court to determine the dischargeability under § 523(a)(5)(B)[1] of the Bankruptcy Code[2] of the husband's obligation to indemnify and save harmless the wife from the Hicks and Key obligations. The defendant, however, seeks to interpose dischargeability of the wife's claims for indemnification as a defense to her motion for modification. The issue of dischargeability is properly before this court. "State courts of general jurisdiction have the power to decide cases involving federal . . . rights where . . . neither the Constitution nor statute withdraws such jurisdiction." BostonStock Exchange v. State Tax Commission, 429 U.S. 318, 319 n. 3, CT Page 762097 S.Ct. 599, 50 L.Ed.2d 514 (1977). Here, jurisdiction has not been withdrawn from state courts. 28 U.S.C. § 1334(b). SeeLewis v. Lewis, 35 Conn. App. 622, 626 (1994), and cases therein cited. Therefore, the dischargeability of an interspousal claim, as presented here, may be determined by a state court.
Hicks, through his attorneys, has now made demand on the plaintiff, advising her of the defendant's default and threatening foreclosure.
The boat was repossessed by Key who claims a deficiency of $65,160, but has not yet commenced proceedings to enforce the deficiency against the plaintiff.
 III
The defendant's claim that his discharge in bankruptcy shields him from the wife's motion to modify alimony is not persuasive. The discharge in bankruptcy obtained by him simply did not embrace his obligation to indemnify and save harmless the wife from the Key and Hicks obligations. Nor was there proof that she had notice or actual knowledge of the bankruptcy proceedings in order to timely file a request to determine the dischargeability of her claim.
 "Unlike dischargeability questions based on § 523(a)(2), (4) and (6), where debts are automatically discharged unless the creditor asks the bankruptcy court to make a determination of nondischargeability, a debtor's obligation to a former spouse is either discharged or not, pursuant to § 523(a)(5), based upon the nature of that obligation regardless of whether or not the bankruptcy court has been asked to pass on the issue . . . . The question of dischargeability is thus preserved, and should there be any dispute, may be determined by the state court in connection with proceedings to enforce the obligation." (Emphasis in original; citations omitted.)
Lewis v. Lewis, supra, 35 Conn. App. 626-627, quoting from In reBalvich, 135 B.R. 327, 330 (N.D.Ind. 1991). See also Hoffmanv. Hoffman, E.D.N.C. 1992 (4th Circ.) 157 B.R. 580, aff'd CT Page 7621 998 F.2d 1009. Accordingly, I conclude that the defendant's discharge is not binding on the plaintiff and does not insulate him from her motion to modify the $1 per year alimony award.
 IV
I now turn to the defendant's claim that his obligation to indemnify the plaintiff was not in the nature of alimony or support as that term is used in11 U.S.C. § 523(a)(5)(B). This claim is not persuasive for several reasons.
First, the court looks to the decree to determine the nature of the defendant's indemnification obligations. A judgment rendered in accord with the consent or agreement of the parties is to be regarded and construed in the same manner as a contract. Barnard v. Barnard, 214 Conn. 99 (1990).
 "A contract is to be constructed as a whole and all relevant provisions will be considered together. In giving meaning to the terms of a contract, we have said that a contract must be construed to effectuate the intent of the contracting parties. In ascertaining intent, we consider not only the language used in the contract but also the circumstances surrounding the making of the contract, the motives of the parties and the purposes which they sought to accomplish. The intention of the parties to a contract is to be determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. The question is not what intention existed in the minds of the parties but what intention is expressed in the language used." (Internal quotation marks and citations omitted.)
Barnard v. Barnard, supra, 214 Conn. 109-110.
The determination of the dischargeability of obligations that fit within § 523(a)(5)(B) is to be determined under bankruptcy, not state law. In re Spong, 661 F.2d 6 (2d CT Page 7622 Cir. 1981); Lesser v. Lesser, 16 Conn. App. 513, 516, cert. denied, 210 Conn. 802 (1988). Nevertheless, "Congress could not have intended that federal courts were to formulate the bankruptcy law of alimony and support in a vacuum precluded from all reference to the reasoning of the well-established law of the states." In re Spong, supra, 661 F.2d 9.
In Forsdick v. Turgeon, 812 F.2d 801 (2d Cir. 1987), the court reviewed a bankruptcy court decision which held a $100,000 award nondischargeable. That $100,000 award was described by the state court trial referee as "nonmodifiable alimony." The Forsdick court affirmed, stating at 802:
 "While the code . . . reflects a strong public policy of providing debtors with fresh starts, Congress has also determined that certain competing public policy interests shall take preference . . . . By virtue of § 523(a)(5), Congress has chosen between two competing interests — those of bankrupts and those of their former spouses . . . and it chose in favor of the latter."
This preference of Congress also applies to indemnification and hold harmless obligations.
 "This provision (§ 523(a)(5) will . . . make nondischargeable any debts resulting from an agreement by the debtor to hold the debtor's spouse harmless on joint debts, to the extent that the agreement is in payment of alimony, maintenance, or support of the spouse, as determined under bankruptcy law considerations that are similar to considerations of whether a particular agreement to pay money to a spouse is actually alimony or a property settlement."
H.R. Rep. No. 595, 95th Cong., 1st Sess. 364 (1977).
The courts consider a number of factors to determine whether an obligation is actually in "the nature of alimony, maintenance or support". 11 U.S.C. § 523(a)(5)(B). SeePassamano v. Passamano, 228 Conn. 85, 90-91 (1993); In reAmmirato, 74 B.R. 605, 607-608; Lesser v. Lesser, 16 Conn. App., CT Page 7623 supra, 516-517; and Lewis v. Lewis, supra, 35 Conn. App. 627-628 (1994).
These include whether the payments appear to balance disparate incomes; whether they terminate on the death or remarriage of the debtor's spouse or upon the occurrence of a specified event; what was the intent of the parties; whether the payments were made to the former spouse or a third party; and whether the obligation is necessary to meet the needs of the former spouse such as the provision of a home, or transportation.
Bearing these principles in mind, it is clear that the intent of the parties expressed in the decree, as amplified and made clear by counsel to the court in the presence of the parties, was that the purpose of the indemnification obligations and the $1 per year alimony award was to enable the plaintiff to maintain her home and for her continued support. It is also evident from an examination of the parties' financial affidavits submitted at the time of the decree that the plaintiff would not have been able to maintain the home and support herself if she was obligated to pay either of the Hicks or Key obligations; nor, in the light of her earning capacity and opportunity to acquire assets and sources of income could she have been reasonably expected to do so.
After consideration of these criteria, I conclude that the defendant's obligation to indemnify the plaintiff was needed by her to maintain her standard of living and her home, and this was "actually in the nature of alimony, maintenance or support", within the meaning of § 523(c)(5).
Indeed, to hold otherwise would permit one of the parties to deceive the other or unilaterally reject an agreement; or undermine the integrity of the original trial court's intent to award modifiable alimony if it were to be needed under the circumstances described. See In re Catron,164 B.R. 912, 917 (E.D.Va. 1994) (failing to give effect to the clearly expressed intent of the parties to a separation agreement "would invite profound mischief and encourage parties to divorce proceedings and their counsel to make agreements that do not reflect their true intent, or worse still, that they do not intend to keep").
V CT Page 7624
It is axiomatic that alimony can be made partially or wholly nonmodifiable under General Statutes § 46b-86(a). Provisions which preclude modification of alimony tend to be disfavored. See Cummock v. Cummock, 180 Conn. 218, 222 (1980). Where an order purporting to preclude modification of alimony is ambiguous, the award will be treated as modifiable. McGuinnessv. McGuinness, 185 Conn. 7, 9 (1981); Scoville v. Scoville,179 Conn. 277, 280 (1979). Where a provision which precludes or restricts a latter court's power to modify financial orders is clear and unambiguous, however, it will be upheld. See Solo v.Solo, 4 Conn. App. 290 (1984).
General Statutes § 46b-86(a) gives the superior court the power to modify alimony orders, which power is limited to the extent that the decree itself precludes modification or where there is no showing of a substantial change in circumstances. Neal v. Neal, 7 Conn. App. 624 (1986).
Here, the decree provided for modification of alimonyonly in the event the defendant failed to pay either the Hicks or Key obligations or indemnify the plaintiff from them. In all other respects, the decree precluded modification. A reasonable construction of the decree therefore, with General Statutes § 46b-86(a) in mind, compels the conclusion that the parties identified the occurrence of certain events as constituting a substantial change of circumstances, thus permitting the plaintiff to seek an upward modification of alimony. The decree spelled out with certainty the extent to which modification is permitted, and those very conditions have been met.
As the grounds for modification have been shown, I now consider all of the factors, as mandated by General Statutes § 46b-82, which were available in the fashioning of the original award. See Borkowski v. Borkowski, 228 Conn. 729 (1994). I also consider the taxable consequences of the awards therein set forth.
It is significant to note the following. The plaintiff is now saddled with the Hicks mortgage loan, which has an approximate balance of $18,000 plus past due interest; she is unable to pay the present monthly payment, as her current financial affidavit shows a shortfall of $62[3] per week between her net income and expenses (excluding debt service). In all probability, she will be subject to collection efforts on the CT Page 7625 Key deficiency.[4] Second, the defendant's net income has increased from $193 per week at the time of the dissolution to $686[5] per week. Third, although the defendant has remarried and has two children of this marriage, his prior and present financial affidavits show a substantial reduction in his negative net worth from approximately $102,000 at the time of the decree to approximately $13,500 of which $9,000 in liabilities could have been discharged. See note 5.
I also note that although the plaintiff's net income has increased from $259 per week to $377 per week, and her assets have increased from $29,300 to $43,900, her liabilities and expenses have now substantially increased.
Accordingly, for the foregoing reasons, the plaintiff's motion to modify alimony is granted and the payments are modified to $65 per week retroactive to April 3, 1995, the date of service upon the defendant, as appears by the sheriff's return. Said alimony payments shall terminate upon the death of either party or the wife's remarriage, and shall be reduced to $1 per year upon the repayment by the defendant of a sum equal to the present balance of the Hicks obligation, whichever first occurs, and shall be taxable income to the plaintiff and deductible by the defendant.
An arrearage is found due the plaintiff from the defendant of $975, representing fifteen weeks through and including the week ending July 15, 1995, resulting from the retroactive modification. Said arrearage shall be repaid at the rate of $5 per week. The total alimony order of $70 per week shall be paid by immediate wage garnishment of the defendant's pension/retirement benefit.
The alimony award shall be secured by an irrevocable designation, of the plaintiff as beneficiary, so long as the defendant shall be obligated to pay said alimony, of $50,000 of the proceeds of the defendant's SBLI life insurance policy. The defendant shall sign and deliver an authorization directed to the insurance company to enable the plaintiff to obtain information relating to the status and good standing of the policy.
I have considered the factors in General Statutes § 46b-62, and the defendant's ability to pay, and award no attorney's fees. CT Page 7626
Teller, J.