[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: PLAINTIFF'S MOTION FOR CONTEMPT (172.04) AND DEFENDANT'S MOTION FOR CONTEMPT (177)
The plaintiff and the defendant each filed post judgment motions for contempt. The plaintiff's motion for contempt is based on the defendant's failure to pay child support for the two minor children of the marriage in the amount of $2775 per month for almost two years. The defendant's motion for contempt is based on the plaintiff's failure to pay him $61,050 at a rate of $2775 per month over the course of twenty-two months in accordance with the separation agreement that was incorporated into the dissolution.
The plaintiff filed a Chapter VII bankruptcy petition seeking to discharge the debt owed to the defendant and in her motion for contempt has asked this court to decide whether the debt was discharged. In an attempt to clarify the events that took place in the bankruptcy court, this court took judicial notice of the bankruptcy court file and discovered that the bankruptcy case was opened upon the defendant's motion to open the case to revoke the debtor's discharge in accordance with 11 U.S.C. § 727 (d).[1] The motion to open the case was filed on February 9, 2000 and was granted on February 22, 2000. This court then stayed both the plaintiffs and the defendant's motions for contempt until the bankruptcy court rendered its decision. The bankruptcy court subsequently asked this court to determine whether the plaintiffs debt to the defendant is dischargeable.
The conflict between the parties as to whether the debt to the husband is dischargeable is due to the separation agreement the parties entered into on July 28, 1997. The separation agreement was incorporated into the divorce decree by reference on July 29, 1997, by order of the court, at the final hearing. The parties were before the court and the attorney representing the defendant and the attorney for the minor children read the entire twenty page agreement into the record one paragraph at a time. The plaintiff appeared pro se at the hearing but had been previously represented by counsel. At the conclusion of each paragraph the court asked the parties if they agreed to the paragraph, to which the response was, for the most part, either "yes" or "agreed." CT Page 5558
The plaintiff argues that the separation agreement is ambiguous and the court should look beyond the four corners of the agreement in determining whether the debt owed to the defendant is dischargeable in bankruptcy. The defendant, on the other hand, argues that the separation agreement is not ambiguous and the court should look only at the four corners of the agreement to determine the parties' intent and not beyond the agreement. In dissolution actions where a separation agreement was entered into between the parties, the standard of review usually begins with whether the agreement agreement "was ordered incorporated . . . into the dissolution decree. A judgment rendered in accordance with such a stipulation of the parties is to be regarded and construed as a contract. Accordingly, [o]ur resolution of the [plaintiffs] claim is guided by the general principles governing the construction of contracts. A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. . . . Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law . . ." (Citations omitted; internal quotation marks omitted.) Issler v. Issler, 250 Conn. 226,234-5, 737 A.2d 383 (1999). When a court is determining dischargeability under the Bankruptcy Code, however, the court may consider extrinsic evidence. See Matter of Benich, 811 F.2d 943,945 (5th Cir. 1987). The Appellate Court has stated that "[t]o the extent that [extrinsic evidence] reveals the parties' intent, the trial court [may] properly consider it. . . . ([i]n determining [dischargeability] the court must look beyond the language of the decree to the intent of the parties." (Citations omitted; internal quotation marks omitted.) Lewis v. Lewis, 35 Conn. App. 622, 629-30, 646 A.2d 273
(1994). For this reason, the court has changed its position on looking beyond the four corners of the agreement and will consider the transcript of the July 27, 1997 hearing before Judge Driscoll.
The paragraphs of the separation agreement that are relevant to the parties' disagreement over the issue of dischargeability are "Article II — Alimony" and "Article VIII — Division of Property." It is these two articles that create an ambiguity because article II directly contradicts article VIII. The testimony before Judge Driscoll, however, CT Page 5559 sheds light on the intent and understanding of the parties and clears up the ambiguity in the language used in the agreement.
Article II provides: "The HUSBAND and the WIFE hereby waive any right, title or interest to past, present or future alimony and accept the provisions herein in lieu of, and full settlement and satisfaction of any and all claims and rights against the other party for his or her support and maintenance, and in full settlement and satisfaction of any and all other claims and rights whatsoever which she or he ever had, now has or might hereafter have against the other party by reason of their relationship as HUSBAND and WIFE, or otherwise. The HUSBAND and WIFE hereby release and quit the other party and his or her estate of and from any and all claims, liabilities and obligations whatsoever, past, present and future actual or potential whether arising, from their relationship as HUSBAND and WIFE or otherwise, except only such as arespecifically assumed by or imposed upon the other party hereunder." (Emphasis added.) The plaintiff argues that this paragraph of the agreement clearly states the intent of both parties to waive alimony. The defendant argues that the last sentence of Article II, as emphasized by this court, allows for exceptions to the waiver of alimony and Article VIII, paragraph 8.7 is an exception. The testimony of the parties before Judge Driscoll, however, demonstrates that both parties were aware that they were giving up alimony forever and that was their intent. After Attorney Shanley read the above paragraph, the following colloquy took place:
"The Court: Mrs. Stebbins, this means you're giving up any rights you might have to alimony forever. Do you understand that?
"Mrs. Stebbins: Yes, I do.
"The Court: That no matter what happens, you could never come back for it?
"Mrs. Stebbins: Yes, I understand.
"The Court: You do understand that?
"Mrs. Stebbins: Yes, I do.
"The Court: Let me just check that off of there. Well, I don't know what the money disposition is but I notice that your monthly income is far exceeded by your expenses.
"Mrs. Stebbins: Yes.
"The Court: How do you manage, expect to manage? Are you getting CT Page 5560 enough from the support?
"Mrs. Stebbins: Yes. And I'm planning to get remarried, Your Honor, so I don't really want anything from my husband.
"The Court: All right. Go ahead.
"Mr. Shanley: Your Honor, just for the record, also Mr. Stebbins is waiving his right and claim to alimony in the future, as well.[2]
"The Court: Well, I know that, but it appears from the monetary situation that the plaintiff will be more in need of it at the moment.
"Mr. Shanley: 3.1. Commencing —
"The Court: Wait a minute. Did you agree to this?
"Mrs. Stebbins: Yes, ma'am, I did.
"The Court: Did you sir?
"Mr. Stebbins: Yes.
"The Court: All right. Go ahead."
Thus, the above colloquy clarifies the intent of the parties and firmly establishes that they both knowingly waived their respective rights to alimony forever.
Article VIII provides in pertinent part, paragraph 8.7: "The WIFE shall pay to the HUSBAND $61,050 at a rate of $2,775 per month for 22 consecutive months commencing on August 1, 1997 and continuing until paid in full on May 31, 1999. The payments called for herein shall be in the nature or support and maintenance to the HUSBAND and shall not be dischargeable in bankruptcy. Said payments shall be non-modifiable as to amount and duration and are non-taxable to either party and not deductible by either party."
The plaintiff argues that because this language is set forth under the label "property" in the agreement, the court should find that the $61,050 is a dischargeable property distribution. "Although a written manifestation of agreement is persuasive evidence of intent . . . the label that the parties attach to a payment is not dispositive; the court must look to the substance, and not merely the form, of the payments." (Citations omitted.) In re Brody, 3 F.3d 35, 38 (2d Cir. 1993). See alsoCaporale v. C.W. Blakeslee Sons, Inc., 149 Conn. 79, 86, 175 A.2d 561
CT Page 5561 (1961); Whalen v. Ives, 37 Conn. App. 7, 16, 654 A.2d 798, cert. denied,233 Conn. 905, 657 A.2d 645 (1995) ("we look to the substance of the claim rather than the form"). "[F]actual inquiry under section 523(a) (5) is not limited to the four corners of a separation agreement or divorce decree." In re Brody, supra, 39.
Although the language of the agreement would lead the court to conclude that the $61,050 was in the nature of alimony and nonrechargeable, the testimony before Judge Driscoll contradicts such a conclusion. After reading the relevant section of the agreement into the record, the following colloquy took place:
"The Court: You agree to that?
"Mrs. Stebbins: Yes.
"Mr. Shanley: 8.8.
"The Court: What's the reason for that? What's this supposed to be for?
"Mr. Shanley: For the exchange of the equity in the home and other obligations, Your Honor.[3]
"The Court: Okay. Go ahead."
Additionally, schedule F of the plaintiffs bankruptcy petition, entitled "creditors holding unsecured nonpriority claims" includes a debt to the defendant for an "undetermined amount." Consideration for the claim is as follows: "claims of contribution, if any, for joint liabilities arising personally and out of business; claims for joint and several liability; claims for property under divorce decree." (Emphasis added.) (Bankruptcy Petition, Schedule F, p. 10.) Under federal bankruptcy law, 11 U.S.C. § 523 (a) "[a] discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt . . . (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that (A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 408(a)(3) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the natureCT Page 5562of alimony, maintenance, or support." (emphasis added).
Based on the testimony before Judge Driscoll including the colloquies previously quoted, the court concludes that the intent of the parties was to waive alimony completely as set forth in article II. The court finds that the intent of article VIII, Practice Book ¶ 8.7 was in the nature of a property distribution and as such is dischargeable.
The defendant also argues that the debt should not be discharged because he did not receive notice of the filing of the bankruptcy petition. The plaintiff contends that the defendant had actual knowledge that she filed for bankruptcy by virtue of a conversation the defendant had with her and a conversation with the attorney handling the plaintiffs bankruptcy petition and actual knowledge is a permissible substitute for formal notice. "Courts have relied on the different policies underlying corporate reorganizations and individual debtor proceedings in upholding the requirement that creditors in the latter type of proceeding act on their notice or actual knowledge, notwithstanding absence of formal notice. E.g., [In re] Green, 876 F.2d [854, 856 (10th Cir. 1989)] . . . [In re] Alton, 837 F.2d [457, 460 (11th Cir. 1988) (per curiam)] (notice or actual knowledge proviso "furthers the bankruptcy policy of affording a `fresh start' to the [individual] debtor"); see also In re Compton, 891 F.2d 1180, 1186 n. 11 (5th Cir. 1990) (discussing distinction other circuits have drawn between burden on creditors in Chapter 7 and Chapter 11 proceedings)."In re Medaglia, 52 F.3d 451 (2d Cir. 1995). Additionally, the issue of notice is no longer relevant because the bankruptcy court opened the judgment and referred the matter to this court to determine whether there was an ambiguity in the agreement and whether the subject debt was dischargeable.
The testimony presented by the parties at the hearing on the motions for contempt demonstrated that neither the plaintiff nor the defendant wilfully disobeyed an order of the court. "In order to constitute contempt, a party's conduct must be wilful. Connolly v. Connolly,191 Conn. 468, 483, 464 A.2d 837 (1983)." Eldridge v. Eldridge,244 Conn. 523, 529, 710 A.2d 757 (1998). "Contempts of court may be classified as either direct or indirect, the test being whether the contempt is offered within or outside the presence of the court. . . . The defendant's failure to comply with the support order is, therefore, an indirect contempt because it occurred outside the presence of the trial court." Billings v. Billings, 54 Conn. App. 142, 152, 732 A.2d 814
(1999). "A finding of indirect civil contempt must be established by `sufficient proof' that is premised on competent evidence presented to the trial court and based on sworn testimony. . . . A trial-like hearing should be held if issues of fact are disputed. (Citations omitted; CT Page 5563 emphasis added.) Bunche v. Bunche, 36 Conn. App. 322, 324, 650 A.2d 917
(1994). Due process of law requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation. . . . Because the inability of [a party] to obey an order of the court, without fault on his part, is a good defense to a charge of contempt . . . the [party] had the right to demonstrate that his failure to comply with the order of the trial court was excusable. (Citations omitted; internal quotation marks omitted.) Bryant v. Bryant,228 Conn. 630, 637, 637 A.2d 1111 (1994)." (Internal quotation marks omitted.) Kelly v. Kelly, 54 Conn. App. 50, 59, 732 A.2d 808 (1999).
"The contempt remedy is particularly harsh . . . and may be founded solely upon some clear and express direction of the court. . . . One cannot be placed in contempt for failure to read the court's mind. (Citations omitted; internal quotation marks omitted.) Blaydes v.Blaydes, 187 Conn. 464, 467, 446 A.2d 825 (1982). A good faith dispute or legitimate misunderstanding of the terms of an alimony or support obligation may prevent a finding that the payor's nonpayment was wilful. This does not mean, however, that such a dispute or misunderstanding will preclude a finding of wilfulness as a predicate to a judgment of contempt. Whether it will preclude such a finding is ultimately within the trial court's discretion. It is within the sound discretion of the court to deny a claim for contempt when there is an adequate factual basis to explain the failure to honor the court's order. Marcil v.Marcil, 4 Conn. App. 403, 405, 494 A.2d 620 (1985)." Eldridge v.Eldridge, supra, 244 Conn. 529.
Both the plaintiffs and the defendant's motions for contempt are denied. The plaintiff testified that she could not afford to pay the defendant $2775 per month because she was not receiving the child support payments and was in financial distress as evidenced by the filing of the bankruptcy petition. Thus, the court concludes that she did not wilfully disobey an order of the court. Furthermore, the defendant's testimony was credible regarding his "legitimate misunderstanding of the terms of [the] alimony . . . obligation" which in this case prevents a finding that the nonpayment was willful.Eldridge v. Eldridge, supra, 244 Conn. 529. The fact that the defendant failed to pay child support in the amount of $2775 per month to the plaintiff for approximately twenty-two months, the length of time the plaintiff was given to pay the defendant $61,050 at the same rate per month for twenty-two months, leads this court to conclude that the defendant mistakenly believed that the plaintiffs failure to make the monthly payments relieved him of his duty to pay child support in the CT Page 5564 equivalent amount. This conclusion is based on the fact that the defendant began making child support payments in May or June of 1999, the date on which the plaintiffs obligation to pay the defendant a total of $61,050 ended.
For the foregoing reasons, the court finds that the plaintiffs payment totaling $61,050 to the defendant is dischargeable in bankruptcy because it is in the nature of a property settlement and not alimony or support. Additionally, both the plaintiffs and defendant's motions for contempt are denied because the evidence and testimony did not show that either party wilfully disobeyed an order of the court.
HARRIGAN, J.