### Harriet S. Pulvermacher *v.* Louis C. Pulvermacher

House, C. J., Shapiro, Loiselle, MacDonald and Bogdanski, Js.

Argued April 2—decision released May 21, 1974

*Richard A. Silver,* with whom, on the brief, was *Stephen M. Seelig,* for the appellant (defendant).

*Robert A. Epstein,* with whom, on the brief, was *Cary L. Fleisher,* for the appellee (plaintiff).

MacDonald, J.  The defendant, Louis C. Pulvermacher, has appealed from the denial of his motion to modify the decree granting a divorce to his former wife, the plaintiff, Harriet S. Pulvermacher, by revoking and modifying the order requiring the defendant to make periodic payments to the plaintiff for her maintenance, she having remarried subsequent to the entry of such judgment.[1]

The relevant facts are undisputed.  On June 12, 1968, a decree of divorce was rendered in favor of the plaintiff which approved and ordered placed on file a separation agreement between the parties and incorporated directly into the judgment a paragraph

---

[1] On or about October 13, 1968, the plaintiff married Zangwell B. Lasker.

of the agreement providing, in relevant part, for the payment by the defendant "to the plaintiff for her maintenance the total sum of Twenty Five Thousand Dollars ($25,000.00) in one hundred twenty one (121) equal payments . . . . Said payments are to continue without any diminution whether or not the defendant remarries and shall not terminate if the plaintiff remarries or dies, and in the event of the death of the defendant, the unexpired payments shall be an indebtedness of his estate." The entire paragraph, as incorporated in the judgment, is set forth in the footnote.[2]

In addition to the foregoing provisions for the payment of $25,000 to the plaintiff wife, the judgment, in language incorporated from the agreement, required the defendant to procure, and he did procure, the written agreement of his sister to guarantee payment thereof in the manner specified in the agreement, and further directed that the defendant set aside specific sums to be derived from insur-

---

[2] "The defendant shall pay to the plaintiff for her maintenance the total sum of Twenty Five Thousand Dollars ($25,000.00) in one hundred twenty one (121) equal payments commencing on the first of the month three (3) years after the date of the execution of the within agreement, payable monthly in advance. Said payments are to continue without any diminution whether or not the defendant remarries and shall not terminate if the plaintiff remarries or dies, and in the event of the death of the defendant, the unexpired payments shall be an indebtedness of his estate. In the event of the death of the defendant, at any time during said one hundred twenty-one payments, the unpaid balance shall be payable at the same rate, or, at the option of the wishes of an executor, administrator, or legal representative, the unpaid balance shall be discounted at the rate of five per cent (5%) per annum from the date which each of said payments shall otherwise be due to the date of the death of the defendant, and such sum as herein determined, when paid, shall constitute payment in full in lieu of the sum above provided for. It is the intention hereof that such payments shall be alimony payments which shall qualify under the Internal Revenue Act in such wise that they shall constitute a deduction to the defendant."

ance in a separate fund for the purpose of reducing the liability of his estate to the plaintiff for the payment of the $25,000. The separation agreement, as approved by the court and as partially incorporated into the judgment as above noted, was signed by the defendant on June 11, 1968, and he was then represented by independent counsel.

In moving to set aside the judgment with respect to the periodic payments to the plaintiff therein ordered, the defendant introduced no evidence and made no claim of change of circumstances other than to recite the plaintiff's remarriage on or about October 1, 1968, which he claimed as a basis for "revoking and vacating said order requiring the defendant to pay alimony as originally ordered and stated herein and that the order of revocation be dated as of the date of the plaintiff's remarriage on or about October 1, 1968."

The defendant's position can be briefly stated. He argues that § 46-21 of the General Statutes[3] author-

---

[3] "[General Statutes] Sec. 46-21. ALIMONY AND CHANGE OF NAME. The superior court may assign to any woman divorced by such court a part of the estate of her husband and, in addition thereto or in lieu thereof, may order alimony to be paid from the husband's income, may change her name and may order alimony pendente lite to be paid to the wife in any complaint or cross-bill for divorce pending in said court. In fixing the amount which shall be allowed, the court shall take into consideration the amount of the husband's income, whether the same is derived from property already acquired or from his personal daily exertions or from both and, whenever an order is made for the payment, at stated periods, of alimony from the income of the husband, the court may, at the time of issuing such order, fix a definite amount which may, at any time, be paid by the husband in lieu of all periodical payments which would otherwise accrue after the payment of such amount. Any order for the payment of alimony from income may, at any time thereafter, be set aside or altered by such court. The costs of commitment of any person imprisoned for contempt of court by reason of failure to comply with an order of the court issued under the provisions of this section shall be paid by the state as in criminal cases."

ized the court to modify or set aside any award of "alimony" to be paid out of the husband's income, that the agreement, in that portion incorporated into the judgment, specifically used the terms "maintenance" and "alimony" and required periodic payments out of income, and that, according to the rule established in *Cary* v. *Cary,* 112 Conn. 256, 260–61, 152 A. 302, the obligation of a husband to pay "alimony" ceases with the remarriage of the wife unless there is a showing of exceptional circumstances by the wife. *Lasprogato* v. *Lasprogato,* 127 Conn. 510, 515, 18 A.2d 353. No such showing was made here.

The plaintiff, on the other hand, contends that the parties' intent as expressed in the separation agreement and as incorporated into the decree relates to a lump sum property settlement and not to alimony and is thus determinative of the issue.

It is difficult to see how the directive of the decree could have been more clearly expressed. It specifically and unequivocally orders that the payments "continue without any diminution whether or not the defendant remarries and shall not terminate if the plaintiff remarries or dies, and in the event of the death of the defendant, the unexpired payments shall be an indebtedness of his estate." As further evidence of the intent of the decree that the obligation be a permanent one there is the requirement which it contains for a written guarantee of the defendant's sister for the payment of the sum of $25,000 to the plaintiff, as well as the order for insurance to be set aside to reduce the liability of the defendant's estate in the event of the defendant's death. Moreover, the purport of the decree, as worded, was that the $25,000 was to be an award of a specific sum of money which was to be paid in instalments in order to permit the

defendant to take them as deductions under the Internal Revenue Code. Lump sum alimony, even where divided into instalments, is payable in full regardless of future events such as the death of the husband or the remarriage of the wife. 24 Am. Jur. 2d, Divorce and Separation, § 614; *Walters* v. *Walters,* 341 Ill. App. 561, 94 N.E.2d 726, aff'd, 409 Ill. 298, 99 N.E.2d 342; cf. *Holmes* v. *Holmes,* 152 Neb. 556, 41 N.W.2d 919; *Bishop* v. *Bishop,* 194 Okla. 209, 148 P.2d 472. Here, the wording of that portion of the agreement which was incorporated into the decree makes it perfectly apparent that such was the parties' intention, and since the defendant was represented by independent counsel when he signed the agreement, he can hardly complain as to the language used in the decree.

We conclude, therefore, that the divorce decree clearly binds the defendant to make the specified payments and to take the other actions designed to ensure the payment thereof and that the trial court was correct in so concluding.

There is no error.

In this opinion the other judges concurred.