[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
By motion dated October 25, 2001, the plaintiff requested the court hold the defendant in contempt for failure to obey certain orders of the court (Purtill, J.) entered in connection with a judgment of dissolution of marriage dated August 26, 1999. Both parties appeared with counsel and argued the matter on November 26, 2001. Counsel for the parties filed written arguments thereafter.
The judgment of dissolution incorporated by reference the provisions of a certain agreement between the parties dated August 26, 1999. Both parties signed the agreement and acknowledged it, under oath, as their free act and deed. The parties appeared pro se.
Since the dissolution, issues have arisen relative to the interpretation of certain provisions of the agreement. The relevant portion of the agreement is contained in paragraph 6 entitled "As to Alimony:" and paragraph 7 entitled "As to Division of Property:"
Paragraph 6, "As to Alimony", states;
 "Michele is asking for Five Hundred Dollars ($500.00) a month up until Larry's retirement from the Navy. After Retirement Michele is eligible for 45% of his Naval Retirement pay. At which time, her % of his retirement pay will replace alimony. At which time, her % of his retirement pay will replace alimony. We also agree that Michele will only receive her share of the retirement pay for sixteen years which equals the amount of time that Michele was a Navy wife and mother. Michele agrees to relinquish her rights to this retirement pay after that time."
Paragraph 7, "As to Division of Property" states;
"Michele will receive: CT Page 16609
 her personal items, the family home, household furnishings, mutual funds, use of the Ford Taurus station wagon, all wooden items made by her father.
 Larry will receive:
 his personal items, the certificate of deposit, the 1965 Harley Davidson Sportster, items which were purchased overseas as to word, Green Bay Packer Stock."
 Joint Items: will be divided evenly.
The plaintiff interprets the section regarding the retirement pay as a property settlement. The defendant interprets the section as alimony.
Courts apply basic contract principles to the interpretation of separation agreements. To determine the parties' intentions the contract language must be "interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [a] court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . any ambiguity in a contract must emanate from the language used oin the contract rather than from one party's subjective perception of the terms." Tremaine v. Tremaine,235 Conn. 45 (1995).
A number of cases have risen regarding the interpretation of paragraphs addressing alimony versus property settlements in separation agreements. As a result, particularly in the bankruptcy arena, the courts have established a list of factors to be used in determining whether a particular "transaction" constitutes alimony or a property settlement in the context of determining dischargeability thereof for bankruptcy purposes. Lesser v. Lesser, 16 Conn. App. 513 (1988). Those factors are:
 1) whether the obligation terminates on the death or remarriage of the debtor's spouse; 2) whether the payments appear to balance disparate income; 3) whether the payments are made to a third party or the ex-spouse; 4) whether the obligation terminates at the end of a specified event (i.e., children are out of school, debt is satisfied, etc.); and 5) what was the intent of the parties. CT Page 16610
Id., at 517.
In Lewis v. Lewis, 35 Conn. App. 622 (1994), the court had to determine, post judgment, whether a lump sum payment of $50,000 was alimony or a property settlement where the separation agreement was silent and where the dissolution court had entered an order finding that neither party was awarded alimony. After reviewing the aforementioned factors, the court found that the payment was alimony and not a property settlement. In so finding, the court stated:
 The purpose of a property settlement is to unscramble property ownership, giving to each spouse an equitable share. here, the trial court found that there was no property ownership to unscramble. The dissolution decree neither required any property to be sold not tied payment of the $50,000 to the disposition of any particular asset. Thus, the evidence suggests that the $50,000 was not a property settlement.
Id. at 627-8.
In Pulvermacher v. Pulvermacher, 166 Conn. 380 (1974), the court held promise to pay specified amount contained in separation agreement was not modifiable upon former spouse's remarriage. The court's order and the separation agreement specifically provided that the $25,000 was to be paid in installments over time and that the payments would be "without any diminution whether or not the defendant remarries and shall not terminate if the plaintiff remarries or dies and in the event of the death of the defendant, the unexpired payments shall be an indebtedness of his estate." Id., 384. The court noted the payment was guaranteed by the defendant's sister and further noted that the defendant was represented by counsel when the separation agreement was signed. Id., 385.
The first Lesser factor is not dispositive. The fact that the agreement is silent as to termination language does not, ipso facto, render the Pension percentage property settlement rather than alimony. As to the second Lesser factor, financial affidavits submitted to the court at the time of dissolution demonstrated that the defendant earned nearly $60,000 per annum while the plaintiff earned only $21,500 per annum, a substantial discrepancy in earnings. That the payments are made to the plaintiff by the defendant rather than to a third person would further suggest that this payment is alimony under Lesser. The termination of the pension payment sixteen years following retirement could lead to either conclusion. CT Page 16611
At the time of the dissolution, the court (Purtill, J.) stated that the court would retain jurisdiction for purposes of effectuating a QDRO (Qualified Domestic Relations Order). A QDRO is not used to divide military retired pay; The Uniformed Services Former Spouses Protection Act USFSPA (10 U.S.C. § 1408, et seq.) and the federal regulations that explain it (32 C.F.R.P. 63) are not part of ERISA. Under USFSPA, a court can divide military retired pay as marital property. In this case, the plaintiff could have been made a direct payee from the Defense Finance Accounting Service as she apparently satisfied the acts requirements. Had that been done, today's inquiry would be moot.
The court finds the 45% of the defendant's naval retirement to be alimony. However, this does not end the discussion. Despite the belief of the vast majority of the divorcing public and numerous practitioners of family law, remarriage by the party receiving alimony does not automatically terminate alimony. The dissolution decree in this case does not expressly state that alimony terminates upon plaintiff's remarriage. If it did, alimony would automatically cease as of that date. SeeMilhalyak v. Milhalyak, 30 Conn. App. 516 (1993). The alimony order remains in effect unless modified, suspended, reduced or terminated pursuant to C.G.S. § 46b-86.
The motion for contempt is denied because the court does not find that the actions of the defendant constitute willful defiance of the court's orders. A reasonable explanation existed for his failure to comply. He believed that he was no longer obligated to pay alimony because of the plaintiffs remarriage. "The fact that the order had not been complied with fully . . . does not dictate that a finding of contempt must enter. It is within the sound discretion of the court to deny a claim for contempt when there is an adequate factual basis to explain the failure to honor the court's order." Marcil v. Marcil, 4 Conn. App. 403, 405 (1985).
Dubay, J.