## FAITH WHITEHEAD PITE *v.* WILLIAM J. PITE
## (AC 33421)

Lavine, Bear and Sheldon, Js.

---

Argued April 9—officially released May 29, 2012

*William F. Gallagher*, with whom, on the brief, was *Hugh D. Hughes*, for the appellant (defendant).

*Daniel J. Krisch*, with whom were *Jean L. Welty* and, on the brief, *Karen L. Dowd*, for the appellee (plaintiff).

BEAR, J. The defendant, William J. Pite, appeals from the judgment of the trial court granting the motion to modify the duration of periodic alimony filed by the plaintiff, Faith Whitehead Pite, and denying the motion to modify and terminate child support filed by the defendant. On appeal, the defendant claims that the court erred in modifying the time limited periodic alimony and in declining to modify and terminate the defendant's child support obligation in light of the defendant's payment of their daughter's private school tuition. We affirm the judgment of the trial court.

The original dissolution judgment, rendered on February 20, 2001, provided, in relevant part, in paragraph four, that the "defendant shall pay to the plaintiff periodic alimony in the amount of $1500 weekly. Alimony shall terminate upon the death of either party, remarriage or cohabitation by the plaintiff, or the plaintiff's sixtieth birthday, whichever shall occur first. Alimony shall terminate on the plaintiff's sixtieth birthday because the plaintiff will then be able to support herself through the interest awarded to her by this judgment in the defendant's profit-sharing plan." Specifically as to the defendant's profit sharing plan, the judgment also provided, in paragraph ten: "The plaintiff is awarded an interest in the amount of $1,887,736 in the profit-sharing plan held by the defendant. This figure represents one-half of the current value of the profit-sharing plan after deducting the value of the plan at the time of the marriage ($905,371)." On March 22, 2001, the court modified paragraph ten of the judgment, explaining: "[I]t was my intent . . . that [the plaintiff] be awarded one-half of the current value of the profit sharing plan after deducting the value of the plan at the time of the marriage . . . . I incorrectly used a valuation of that profit sharing plan as of December 22, 2000, and neglected to use the value that was given to

me as of January 5, 2001. So, I am going to correct my decision to remedy that error. And given the volatility in the market, and it's my understanding that the profit sharing plan is primarily stocks and bonds, if not entirely, I believe it appropriate to enter a percentage rather than a fixed dollar amount at this time. So, I am going to award the plaintiff one-half of the current value of the profit sharing plan after deducting the value of the plan at the time of the marriage, which I find to be $905,371 . . . ."

After the defendant filed an appeal from the court's judgment of dissolution, he and the plaintiff entered into an agreement to modify the dissolution judgment. The stipulated agreement provided, in relevant part, that paragraph ten would be modified as follows: "The [p]laintiff is awarded one-half of the [d]efendant's interest in his profit-sharing plan, less $575,000. The 'one-half' valuation shall be made by taking the value of the [d]efendant's interest as of the date this modification is approved, and subtracting therefrom the value of the defendant's interest in the plan at the time of the marriage, which was $905,371. After that one-half figure is determined, the sum of $575,000 must be subtracted. The remaining figure shall represent the [p]laintiff's share." The court approved the stipulation on August 13, 2002, thereby modifying the dissolution judgment. The parties also agreed to the withdrawal of the defendant's appeal.

On March 4, 2010, approximately one month before her sixtieth birthday, the plaintiff filed a motion to modify alimony, postjudgment. She claimed that the "market conditions resulted in a substantial reduction in the value of the defendant's retirement assets . . . [such that she now was] unable to support herself through the interest awarded to her in the defendant's profit sharing plan, which is substantially changed from the situation anticipated by the court in making the alimony

award." The defendant objected on the ground that the judgment ordered periodic alimony that would terminate on the plaintiff's sixtieth birthday. The defendant also filed a motion seeking, in part, to modify and terminate child support on the ground that the parties' daughter was attending private school and that the defendant was paying her tuition.

On May 3, 2011, the court issued the following orders: "[1] The [c]ourt finds a substantial change in circumstances due to Social Security payments [of $249 weekly] being made to the [plaintiff] for the benefit of the child based on [the defendant's] Social Security. In addition . . . the market fluctuations and a reduction in [the] [p]laintiff's share of [the] [d]efendant's retirement assets reduced the income she would have at age [sixty] anticipated by the original [m]emorandum of [d]ecision.

"[2] Child support shall be modified to $241 per week retroactive to [May 16, 2009] (date of service of the modification).

"[3] Alimony shall be modified downward to $1095 per week retroactive to [April 24, 2010] with no limitation to duration. Alimony is modifiable by either party. The modification of alimony is based on the income and assets of both parties and the fact that [the] [p]laintiff has not become employed full time as anticipated by the original decision." This appeal followed.

I

The defendant first claims that the court erred "in granting the [plaintiff's] motion for modification of alimony where the effect of the court's order was to transform limited duration alimony into lifetime alimony." He argues that this case is distinguishable from *Scoville* v. *Scoville*, 179 Conn. 277, 426 A.2d 271 (1979) (limited duration alimony modifiable unless decree specifically

provides for nonmodifiability), or, in the alternative, that *Scoville* should be overruled. He also argues that even if *Scoville* applies, the court in this case abused its discretion in granting the plaintiff's motion to modify alimony. We conclude that this case is controlled by *Scoville*, that we have no authority to overrule Supreme Court precedent and that the court did not abuse its discretion in granting the plaintiff's motion to modify alimony.

As a preliminary matter, we set forth our standard of review. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Trial courts have broad discretion in deciding motions for modification. . . . Modification of alimony, after the date of a dissolution judgment, is governed by General Statutes § 46b-86."[1] (Citation omitted; internal quotation marks omitted.) *Schwarz* v. *Schwarz*, 124 Conn. App. 472, 476, 5 A.3d 548, cert. denied, 299 Conn. 909, 10 A.3d 525 (2010).

Because we are concerned, in this part of our analysis, with whether the alimony provision in the dissolution judgment was nonmodifiable, we employ the following standard. "The construction of a judgment is

---

[1] General Statutes § 46b-86 (a) provides in relevant part: "Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support, an order for alimony or support pendente lite or an order requiring either party to maintain life insurance for the other party or a minor child of the parties may, at any time thereafter, be continued, set aside, altered or modified by the court upon a showing of a substantial change in the circumstances of either party . . . ."

a question of law for the court. . . . As a general rule, judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the judgment. . . . The judgment should admit of a consistent construction as a whole. . . . It is true that provisions for nonmodification are generally not favored and are upheld only if they are clear and unambiguous. If an award is intended to be nonmodifiable, it must contain express language to that effect. . . . There is no given set of words that must be used to preclude modification; an order is nonmodifiable if the decree distinctly and unambiguously expresses that it is. . . . In making this determination, we look only at the dissolution decree itself." (Citations omitted; internal quotation marks omitted.) *Sheehan* v. *Balasic*, 46 Conn. App. 327, 332, 699 A.2d 1036 (1997), appeal dismissed, 245 Conn. 148, 710 A.2d 770 (1998).

Section 46b-86 (a) "suggests a legislative preference favoring the modifiability of orders for periodic alimony . . . [and requires that] the decree itself must preclude modification for this relief to be unavailable. . . . If an order for periodic alimony is meant to be nonmodifiable, the decree must contain language to that effect. . . . Such a preclusion of modification must be clear and unambiguous. . . . If a provision purportedly precluding modification is ambiguous, the order will be held to be modifiable. . . . In determining whether the alimony award is modifiable or nonmodifiable, only the dissolution decree itself may be used." (Citations omitted; internal quotation marks omitted.) *Rau* v. *Rau*, 37 Conn. App. 209, 211–12, 655 A.2d 800 (1995).

The defendant first argues that this case is not controlled by *Scoville*. In *Scoville*, the trial court had awarded alimony in the dissolution judgment in the amount of $100 per week for three years. *Scoville* v. *Scoville*, supra, 179 Conn. 277. The judgment provided

that "[a]t the end of the three year period, the payment order of alimony shall terminate." (Internal quotation marks omitted.) Id. The plaintiff thereafter filed a motion for modification, which the court denied on the ground that the award was nonmodifiable, being of fixed duration. Id., 278. On appeal, the Supreme Court explained that the alimony order was an ambiguous order and that it had treated similar orders as modifiable. Id., 280. The court went on to conclude: "[I]n that part of the instant order stating '[a]t the end of the three year period, the payment order of alimony shall terminate,' it is implicit that during that period there be no intervening material change in circumstances warranting modification. . . . The trial court should have reached and decided the issue of whether there was a substantial change in circumstances justifying modification of the alimony order." Id. We conclude that the language of the present case is similarly ambiguous. Specifically, the language of the modified judgment provides, in relevant part, that alimony shall terminate upon the plaintiff's sixtieth birthday. There is no provision in the judgment, however, that states that alimony is nonmodifiable. Accordingly, we conclude that this case is controlled by *Scoville*, and that the alimony award is modifiable upon a showing of a substantial change in circumstances. See id.; see also *Burke* v. *Burke*, 94 Conn. App. 416, 422–24, 892 A.2d 964 (2006); *Rau* v. *Rau*, supra, 37 Conn. App. 213; *Lilley* v. *Lilley*, 6 Conn. App. 253, 255–56, 504 A.2d 563, cert. denied, 200 Conn. 801, 509 A.2d 516 (1986).

The defendant also argues that the reasoning of *Scoville* is flawed and urges us to overrule it. As an intermediate appellate court, however, we are not at liberty to overrule, reevaluate or reexamine controlling precedent of our Supreme Court. See *Stuart* v. *Stuart*, 297 Conn. 26, 45–46, 996 A.2d 259 (2010) ("it is manifest to our hierarchical judicial system that [the Supreme

Court] has the final say on matters of Connecticut law and that the Appellate Court and Superior Court are bound by [its] precedent").

The defendant next argues that, even if *Scoville* applies in this case, the trial court abused its discretion in failing to consider the undisputed facts of this case and the plaintiff's voluntary settlement of the defendant's appeal from the judgment of dissolution, by which, he argues, the plaintiff waived her claim to alimony after her sixtieth birthday.[2] We are not persuaded.

In the dissolution judgment, the court ordered alimony in the amount of $1500 per week, and it explained that "[a]limony shall terminate on the plaintiff's sixtieth birthday because the plaintiff will then be able to support herself through the interest awarded to her by this judgment in the defendant's profit sharing plan." This portion of the dissolution judgment did not change after the judgment was modified. Although the plaintiff later agreed to a lesser amount of the defendant's profit sharing plan, the portion of the judgment concerning alimony remained unchanged. The court clearly anticipated that the plaintiff would be able to support herself through her interest in the profit sharing plan. As she approached her sixtieth birthday with a significant drop in the value of the sum she had received from the profit

---

[2] We note that our Supreme Court has "indicated that if alimony is not awarded in a final dissolution decree, it cannot be awarded in the future based on changed circumstances." *Passamano* v. *Passamano*, 228 Conn. 85, 90 n.7, 634 A.2d 891 (1993). Nevertheless, "the power to act equitably is the keystone to the court's ability to fashion relief in the infinite variety of circumstances that arise out of the dissolution of a marriage. . . . These equitable powers give the court the authority to consider all the circumstances that may be appropriate for a just and equitable resolution of the marital dispute." (Citation omitted; internal quotation marks omitted.) *Porter* v. *Porter*, 61 Conn. App. 791, 797, 769 A.2d 725 (2001). "The trial court may award alimony to a party even if that party does not seek it and has waived all claims for alimony." *Lord* v. *Lord*, 44 Conn. App. 370, 374, 689 A.2d 509, cert. denied, 241 Conn. 913, 696 A.2d 985 (1997), cert. denied, 522 U.S. 1122, 118 S. Ct. 1065, 140 L. Ed. 2d 125 (1998).

sharing plan, as was found by the court, she filed a motion for modification.

At the conclusion of the hearing on the parties' motions, the court specifically found that "[the dissolution court] clearly intended that the plaintiff would be able to be self-supporting if she got the $1,887,000 [the court] originally intended from the retirement assets. [There is] no evidence before [the court] that any judge considered the impact of the [agreed upon] reduction of that sum on the termination of the alimony. The parties did not raise that issue at the time the settlement was reached, and the [defendant's] appeal [from the dissolution judgment] was withdrawn. The court is compelled to take that into consideration today. It's clear that the defendant has been able to retire . . . and not have any diminished lifestyle as a result of his retirement. If the [plaintiff's] . . . alimony is not continued, her lifestyle will be significantly diminished. She will have to liquidate assets in order to support herself."

The court, in its written order, specifically found that the drop in the value of the sum the plaintiff had received from the defendant's profit sharing plan substantially had affected the plaintiff's income, and it ordered that alimony should continue. It did reduce the amount, however, from $1500 per week to $1095 per week. On the basis of the record before us, we are not persuaded that it was an abuse of the court's discretion to continue alimony, as it appears to effectuate the intent of the dissolution judgment.

II

The defendant next claims that the court "erred in denying [his] motion to modify [and terminate] child support where the minor child was enrolled in public school at the time of the entry of the original child support order, but where the child was subsequently

enrolled in a private school where the annual tuition, room and board, paid solely by the [defendant], was approximately $46,000 and where the [defendant's] annual child support obligation was $26,000." We are not persuaded.

"[The] trial court is endowed with broad discretion in domestic relations cases. Our review of such decisions is confined to two questions: (1) whether the court correctly applied the law, and (2) whether it could reasonably have concluded as it did." (Internal quotation marks omitted.) *Lefebvre* v. *Lefebvre*, 75 Conn. App. 662, 664, 817 A.2d 750, cert. denied, 263 Conn. 921, 822 A.2d 243 (2003).

Under the terms of the dissolution judgment, the defendant was ordered to pay $500 per week in child support. On May 5, 2009, the defendant filed a motion seeking, in relevant part, to modify and terminate child support on the basis of his paying the private school tuition costs of the parties' daughter. The defendant, however, did not proceed on that motion, but he filed a new motion to modify and terminate child support on May 2, 2011, asking that the court terminate his obligation because he was paying the private school tuition of the parties' daughter.[3] The court denied the motion to modify and terminate child support, but it reduced the child support amount to $241 per week, retroactive to May 16, 2009.[4] On appeal, the defendant argues: "The trial court abused its discretion in failing to modify [and terminate] the child support order to

[3] The May 5, 2009 motion was entitled "Motion to Modify Primary Residence of Minor Child, Child Support and Alimony." During an April 10, 2010 hearing when the parties, in part, were discussing that motion, the parties appeared to agree that the motion was stale, not having been proceeded on within ninety days of its filing. See Practice Book §§ 25-26 and 25-34.

[4] We offer no opinion on the propriety of the retroactivity of the court's order going back to the date of service of the May 5, 2009 motion. Neither party has raised this as an issue.

reflect the [defendant's] payments of approximately $46,000 per year toward tuition, room and board at the Taft School."[5]

In the dissolution judgment, the defendant was ordered to "pay child support to the plaintiff in the amount of $500 weekly." The judgment also provided: "The parties shall share equally the cost of any qualified child care and any unreimbursed medical expenses for the minor child." There was no requirement in the judgment that either party bear the responsibility of paying for their daughter to attend private school. The defendant voluntarily assumed this financial obligation for his daughter's benefit.

At the hearing on the parties' motions, the court found that the decision to send their daughter to private school was a unilateral decision made by the defendant. It further found that the plaintiff made significant financial expenditures on behalf of the child. Specifically, the court found: "It was clear to the court on a review of the file and the testimony that was presented yesterday that the decision for the minor child to attend Taft boarding . . . school was a unilateral decision by [the defendant]. It's also clear to the court that [the plaintiff] visits the child one or two times a week and is far more involved in the child's life and . . . spends substantial amounts of money supporting the child in addition to what [the defendant] is paying in tuition and sundry items that he pays at Taft School. The court finds that the unilateral decision to enroll the child in a private boarding school is not a basis for modification of the child support." The court's ruling is in accord with our holding in *Culver* v. *Culver*, 127 Conn. App. 236, 243, 17 A.3d 1048 ("[t]he defendant's voluntary acceptance

---

[5] We note that the defendant seems to ignore the fact that the court did reduce his child support obligation from $500 per week to $241 per week, albeit for a reason unrelated to his payment of the child's private school tuition.

of a subsequent obligation to pay private school tuitions in no way lessened his court-ordered child support obligation"), cert. denied, 301 Conn. 929, 23 A.3d 724 (2011).

The court went on to find a substantial change in circumstances due to the plaintiff's receipt of social security payments for the benefit of the child, however, and it reduced the defendant's direct child support obligation accordingly, cutting it by slightly more than 50 percent, although the weekly total amount of support received by the plaintiff remained the same, at $500. After reviewing the record and the arguments of the parties, we are not persuaded that the court abused its discretion by not terminating the defendant's child support obligation.

The judgment is affirmed.

In this opinion the other judges concurred.