******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

REBECCA NATION-BAILEY *v.*
ADRIAN PETER BAILEY
(SC 19245)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and
Robinson, Js.

*Argued December 3, 2014—officially released April 21, 2015*

*David N. Rubin*, for the appellant (plaintiff).

*Roger K. Smith*, pro hac vice, with whom, on the brief, were *Robert Jon Hendricks*, pro hac vice, and *Bernard J. Garbutt III*, for the appellee (defendant).

*Opinion*

ROBINSON, J. The sole issue in this certified appeal is whether a separation agreement that requires the payment of unallocated alimony and child support "until the death of either party, the [w]ife's remarriage or cohabitation as defined by [General Statutes] § 46b-86 (b),"[1] terminates the support obligation permanently upon the wife's cohabitation, or whether that agreement affords the trial court discretion to suspend that obligation for the cohabitation period, which in this case lasted approximately four months. The plaintiff, Rebecca Nation-Bailey, appeals, upon our grant of her petition for certification,[2] from the judgment of the Appellate Court reversing the judgment of the trial court and remanding the case with direction to, inter alia, render judgment terminating the obligation of the defendant, Adrian Peter Bailey, to pay the plaintiff alimony "as of the initial date of the plaintiff's cohabitation . . . ." *Nation-Bailey* v. *Bailey*, 144 Conn. App. 319, 330, 74 A.3d 433 (2013). On appeal, the plaintiff claims that the Appellate Court improperly concluded that § 3 (B) of the parties' separation agreement (agreement), which was incorporated into the judgment dissolving their marriage, "mandated the permanent cessation of unallocated . . . support upon a finding of cohabitation by the plaintiff," because, inter alia, the agreement: (1) did not provide that the unallocated support obligation was nonmodifiable; and (2) includes § 46b-86 (b) by reference, thus incorporating the trial court's remedial authority under that statute to modify, suspend, or terminate the alimony obligation. We conclude that the plaintiff's reading of the agreement is inconsistent with its plain and unambiguous language. Accordingly, we affirm the judgment of the Appellate Court.

The Appellate Court's opinion aptly sets forth the following undisputed facts and procedural history. "The parties [married] on July 4, 1999, and one child was born of their union. On February 21, 2007, the court, incorporating by reference the terms of the agreement, entered a judgment dissolving the parties' marriage. The relevant portions of the agreement are as follows.

"Section 3 (B) provides in relevant part: 'Unallocated alimony and child support shall be paid until the death of either party, the [plaintiff's] remarriage or cohabitation as defined by . . . § 46b-86 (b), or until August 1, 2011.'

"Section 3 (F) provides: 'In the event of the termination of the alimony payments during the minority of the child, the parties shall determine the amount of child support to be paid by the [defendant] during his lifetime to the [plaintiff] for the support of [the] child and in the event they are unable to agree, the amount of such child support payments shall be determined by a court of competent jurisdiction. Said amount shall be

paid retroactive to the date of the termination of alimony.'

"On May 25, 2010, the defendant filed a postjudgment motion for modification of unallocated support, medical and other expenses. On November 24, 2010, the plaintiff filed a motion for contempt, alleging, in part, that the defendant was in wilful contempt for failing to pay unallocated alimony and child support as ordered in the dissolution judgment. On April 21, 2011, the defendant filed a motion to 'enforce termination of unallocated support and for other relief,' arguing that, by virtue of the self-executing language of § 3 (B) of the agreement, the unallocated alimony and child support obligation had terminated in December, 2007, because the plaintiff, at that time, was cohabiting, as defined by § 46b-86 (b). On July 7, 2011, the plaintiff filed a postjudgment motion for child support, requesting that the court enter child support orders if it found that the unallocated alimony and child support order had been terminated.

"On April 17, 2012, following a hearing, the court found that there had been a substantial change in circumstances warranting a reduction in the defendant's unallocated alimony and child support obligation, and the court ordered the defendant to pay $200 per week to the plaintiff in such unallocated alimony and support. The substantial change in circumstances was that the plaintiff and her then fiancé, Steven Cooper, had executed a lease together and that they had cohabited from December, 2007, through late March, 2008, with Cooper sharing some of the plaintiff's living expenses during that period, thus altering her financial needs. The court substantively applied § 46b-86 (b) and ordered that the defendant's unallocated support obligations were suspended during the time of the plaintiff's cohabitation, but that, otherwise, he continued to owe her unallocated alimony and child support. Further, the court found that the defendant was in contempt for not having paid such unallocated support to the plaintiff for a six month period prior to his filing the May 24, 2010 motion for modification." *Nation-Bailey* v. *Bailey*, supra, 144 Conn. App. 321–23.

The defendant appealed from the judgment of the trial court to the Appellate Court. In a divided decision, the Appellate Court reversed the judgment of the trial court. Id., 330. The Appellate Court majority agreed with the defendant's claim that the trial court had "improperly applied the substantive terms of § 46b-86 (b), [and] modified the judgment by suspending his unallocated alimony and support payments for four months, rather than, as required by § 3 (B) of the agreement, terminating such payments upon the plaintiff's cohabitation in December, 2007." Id., 323. Noting that the fact of cohabitation, as defined by § 46b-86 (b) and *D'Ascanio* v. *D'Ascanio*, 237 Conn. 481, 485–86, 678

A.2d 469 (1996), was undisputed for purposes of the appeal, the Appellate Court concluded that the agreement "clearly provides that alimony terminates upon [the] death of either party, the remarriage or cohabitation of the plaintiff as defined in § 46b-86 (b), or on August 1, 2011 . . . ." (Footnote omitted.) *Nation-Bailey* v. *Bailey*, supra, 144 Conn. App. 324; see also id., 324 n.2 (citing Black's Law Dictionary [4th Ed. 1968] for definition of "until" in determining meaning of agreement).

In so concluding, the Appellate Court rejected the plaintiff's argument that the agreement's reference to § 46b-86 (b) means that "the alimony award is not terminated upon cohabitation, although that is the sole remedy set forth in the agreement," because "any reference to § 46b-86 (b) in the agreement means that the court has the authority in the event of cohabitation to modify the amount of, to suspend or to terminate alimony, despite any limitation of or delineation of a remedy in the agreement." *Nation-Bailey* v. *Bailey*, supra, 144 Conn. App. 325. The Appellate Court relied on this court's decision in *D'Ascanio* v. *D'Ascanio*, supra, 237 Conn. 481,[3] and disagreed with the plaintiff's reliance on its decisions in *Krichko* v. *Krichko*, 108 Conn. App. 644, 948 A.2d 1092, cert. granted, 289 Conn. 913, 957 A.2d 877 (2008) (appeal withdrawn May 19, 2009), and *Mihalyak* v. *Mihalyak*, 30 Conn. App. 516, 620 A.2d 1327 (1993). *Nation-Bailey* v. *Bailey*, supra, 326–28. Accordingly, the Appellate Court reversed the judgment of the trial court and remanded the case "with direction to render judgment terminating the defendant's alimony obligation as of the initial date of the plaintiff's cohabitation, and for further proceedings consistent with this opinion on the defendant's child support obligation[4] and on the plaintiff's motion for contempt."[5] (Footnote added.) Id., 330. This certified appeal followed. See footnote 2 of this opinion.

On appeal, the plaintiff claims that the Appellate Court improperly concluded that the use of the word "until" in § 3 (B) of the agreement "mandated the permanent cessation of unallocated alimony and child support upon a finding of cohabitation by the plaintiff." Citing, inter alia, the Appellate Court's decision in *Pite* v. *Pite*, 135 Conn. App. 819, 43 A.3d 229, cert. denied, 306 Conn. 901, 52 A.3d 728 (2012), the plaintiff argues that this was an improper construction because the agreement lacks a clear and unambiguous provision rendering the payment of unallocated support nonmodifiable as to term or amount. Thus, the plaintiff contends that the fact that the agreement is modifiable means that the use of the word "until" in § 3 (B) does not by itself mandate termination of unallocated support. The plaintiff relies on *Scoville* v. *Scoville*, 179 Conn. 277, 426 A.2d 271 (1979), for the proposition that a trial court retains the authority, when intervening circumstances warrant, to extend an alimony obligation beyond a date

of termination contained in a judgment of dissolution. The plaintiff further relies on Judge Borden's opinion dissenting from the judgment of the Appellate Court; see footnote 5 of this opinion; and argues that the reference to § 46b-86 (b) in § 3 (B) of the agreement gave the trial court access to the " 'full panoply of remedies' " under the statute, such as modification, rather than mandating termination of alimony upon a finding of cohabitation.

In response, the defendant contends that the Appellate Court properly enforced, rather than "rewriting," the unambiguous terms of § 3 (B) of the agreement.[6] The defendant contends that the word "until," as used in § 3 (B) of the agreement, is plainly and unambiguously a "word of limitation" that "establish[es] . . . that upon [the] plaintiff's cohabitation, [the defendant's] alimony obligation immediately terminates," arguing that it does not "[connote] that the cessation is temporary [such] that the previous state of affairs can be resumed or restored." (Internal quotation marks omitted.) In support of this reading, the defendant relies on the agreement's linkage of cohabitation with events such as death or the plaintiff's remarriage, and contends that "unless the word 'until' is qualified by some other language indicating the possibility that the prior state of affairs can be resumed or restored, there is no factual basis upon which to conclude that the termination is only temporary." Disagreeing with Judge Borden's dissenting opinion; see footnote 5 of this opinion; the defendant also relies on *D'Ascanio* v. *D'Ascanio*, supra, 237 Conn. 481, *Krichko* v. *Krichko*, supra, 108 Conn. App. 644, and *Mihalyak* v. *Mihalyak*, supra, 30 Conn. App. 516, and argues that the incorporation of the definition of cohabitation from § 46b-86 (b) into § 3 (B) of the agreement does not, as a matter of law, import the entire statute into the agreement and, therefore, that the trial court's "equitable powers are sharply constrained" in the present case.[7] We agree with the defendant, and conclude that the trial court lacked any remedial powers to suspend the defendant's unallocated support obligation for the duration of the plaintiff's cohabitation because the plain language contained within § 3 (B) of the agreement permanently terminated the defendant's unallocated support obligation upon that cohabitation.

"It is well established that a separation agreement that has been incorporated into a dissolution decree and its resulting judgment must be regarded as a contract and construed in accordance with the general principles governing contracts. . . . When construing a contract, we seek to determine the intent of the parties from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the lan-

guage used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . When only one interpretation of a contract is possible, the court need not look outside the four corners of the contract. . . . Extrinsic evidence is always admissible, however, to explain an ambiguity appearing in the instrument. . . . When the language of a contract is ambiguous, the determination of the parties' intent is a question of fact. . . . When the language is clear and unambiguous, however, the contract must be given effect according to its terms, and the determination of the parties' intent is a question of law. . . .

"A contract is unambiguous when its language is clear and conveys a definite and precise intent. . . . The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. . . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. . . .

"In contrast, a contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . [A]ny ambiguity in a contract must emanate from the language used by the parties. . . . The contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so. . . . If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *Parisi* v. *Parisi*, 315 Conn. 370, 383–84,    A.3d    (2015).

We conclude that § 3 (B) of the agreement plainly and unambiguously provides that permanent termination of the unallocated support obligation is the sole remedy upon cohabitation by the plaintiff, particularly given the provision's use of the word "until" without further qualification.[8] As noted previously, § 3 (B) of the agreement requires the payment of unallocated support "*until* the death of either party, the [plaintiff's] remarriage or cohabitation as defined by . . . § 46b-86 (b), *or until* August 1, 2011." (Emphasis added.) We often consult dictionaries in interpreting contracts, including separation agreements, to determine whether the ordinary meanings of the words used therein are plain and unambiguous, or conversely, have "varying definitions in common parlance." *Remillard* v. *Remillard*, 297 Conn. 345, 355, 999 A.2d 713 (2010); see also id., 355–56 (comparing conflicting dictionary definitions of term " 'cohabitation' " in determining that it was ambiguous for purpose of contract interpretation). Thus, we observe that the word "until" is a "function word to indicate continuance (as of an action or condition) to a specified time." Merriam-Webster's Collegiate Dic-

tionary (11th Ed. 2003); see also id. (defining "until" as conjunction for "up to the time that"). Similarly, Black's Law Dictionary defines "until" as "[u]p to time of. A word of limitation, used ordinarily to restrict that which precedes to what immediately follows it, and its office is to fix some point of time or some event upon the arrival or occurrence of which what precedes will cease to exist." Black's Law Dictionary (6th Ed. 1990); see also *Harbour Pointe, LLC* v. *Harbour Landing Condominium Assn., Inc.*, 300 Conn. 254, 285, 14 A.3d 284 (2011) (*Vertefeuille, J.*, dissenting) (comparing definition of " 'until' " with definition of " 'unless'," which is " 'conditional promise,' " and describing words as having "very different meanings"). Accordingly, the use of the word "until," standing alone, indicates that the defendant's unallocated support obligation was terminated upon the plaintiff's cohabitation because the obligation "cease[d] to exist" at that "point of time or . . . event." Black's Law Dictionary (6th Ed. 1990); see also *In re Marriage of Schu*, 231 Cal. App. 4th 394, 396, 179 Cal. Rptr. 886 (2014) (interpreting marital settlement agreement reserving court's jurisdiction to award spousal support " 'until' " wife is released from prison and holding that jurisdiction did not expire immediately after wife's release where motion was filed prior to her release and hearings on that motion had been continued); cf. *Bergman* v. *Bergman*, 25 Va. App. 204, 214, 487 S.E.2d 264 (1997) (concluding that term " 'shall cease' " in divorce settlement agreement clearly and unambiguously meant that alimony would "end permanently" and not be "temporarily suspend[ed]" upon cohabitation, particularly given its linkage to death and remarriage).

The surrounding contractual provisions also support our conclusion that the agreement clearly and unambiguously provides that the unallocated support obligation terminates upon the plaintiff's cohabitation, and that there is no other remedy, such as suspension, available. First, the agreement treats cohabitation as an event akin to death or remarriage, both of which are events that ordinarily terminate a periodic alimony obligation absent an express provision to the contrary in the court's decree or incorporated settlement agreement.[9] See *Williams* v. *Williams*, 276 Conn. 491, 499–500, 886 A.2d 817 (2005) (discussing default presumption that alimony obligation terminates upon recipient's remarriage); see also id., 501 (upholding trial court decision not to terminate alimony upon remarriage because separation agreement's "provision regarding duration of alimony does not provide that alimony shall terminate upon remarriage; rather, it expressly provides that it shall terminate only upon the death of either party or by a date certain"); *Pulvermacher* v. *Pulvermacher*, 166 Conn. 380, 384, 349 A.2d 836 (1974) (describing decree that "specifically and unequivocally orders that the payments 'continue without any diminution whether or not

the defendant remarries and shall not terminate if the plaintiff remarries or dies, and in the event of the death of the defendant, the unexpired payments shall be an indebtedness of his estate' "). Second, this language in the agreement is not juxtaposed with any other remedies with respect to unallocated support available upon a triggering event. Lastly, § 3 (F) of the agreement expressly contemplates termination of the unallocated support obligation, and requires the determination of child support "[i]n the event of the termination of the alimony payments during the minority of the child . . . ."

The plaintiff does not dispute that the language set forth in § 3 (B) of the agreement is automatic and self-executing with respect to stopping the unallocated support obligation immediately upon her cohabitation—at least temporarily.[10] See *Krichko* v. *Krichko*, supra, 108 Conn. App. 651–52; *Mihalyak* v. *Mihalyak*, supra, 30 Conn. App. 522. Rather, relying on Judge Borden's dissenting opinion, she appears to argue that *Krichko* and *Mihalyak* are distinguishable because the separation agreements at issue in those cases did not refer specifically to § 46b-86 (b), whereas the agreement in this case incorporates that statute's definition of cohabitation and, therefore, "must . . . be read to include the court's full panoply of powers under the statute, including, as in the present case, the power to suspend periodic alimony." *Nation-Bailey* v. *Bailey*, supra, 144 Conn. App. 331 (*Borden, J.*, dissenting). We disagree. This reading of the agreement is inconsistent with the parties' use of the word "define" to limit the scope of the reference to § 46b-86 (b) in relation to "cohabitation." The word "define" means "[t]o explain or state the exact meaning of words and phrases; to state explicitly; to limit; to determine essential qualities of; to determine the precise significance of; to settle; to establish or prescribe authoritatively; to make clear." Black's Law Dictionary (6th Ed. 1990); see also id. (defining "definition" as, inter alia, "[t]he process of stating the exact meaning of a word by means of other words," or "an explanation of the meaning of a word or term").

Indeed, had the parties intended to import the remedial aspect of § 46b-86 (b), in addition to its definitional portion, they could have used more expansive reference terms such as "in accordance with" or "pursuant to." See Black's Law Dictionary (6th Ed. 1990) (defining "accordance" as "[a]greement; harmony; concord; conformity" and stating that " '[p]ursuant to' means 'in the course of carrying out: in conformance to or agreement with: according to' and, when used in a statute, is a restrictive term"); Merriam-Webster's Collegiate Dictionary, supra (defining "according to" as "in conformity with" and defining "pursuant to" as "in carrying out: in conformity with"); see also *In re Steven Daniel P.*, 309 P.3d 1041, 1044 (Nev. 2013) (statute requiring proceedings "pursuant to" second statute means that

requirements of second statute must be followed); *Stocker* v. *Sheehan*, 13 App. Div. 3d 1, 8–9, 786 N.Y.S.2d 126 (2004) (explaining that phrase " 'pursuant to' " is more restrictive than " 'consistent with' "). Similarly, had the parties desired only to suspend, rather than terminate, alimony during the period of cohabitation, they could have used specific contractual language to that effect. See, e.g., *Melletz* v. *Melletz*, 271 N.J. Super. 359, 361, 638 A.2d 898 (App. Div.) (dissolution agreement provided that " '[h]usband's alimony obligation shall be suspended during the period of cohabitation if the wife cohabits with a male unrelated to her by blood or marriage' "), cert. denied, 137 N.J. 307, 645 A.2d 136 (1994). We therefore conclude that the parties' use of § 46b-86 (b) to define the term "cohabitation" means nothing more than that the defendant was required to prove that (1) the plaintiff was living with Cooper, and (2) the living arrangement with Cooper caused a change of circumstances so as to alter the financial needs of the plaintiff.[11] See *D'Ascanio* v. *D'Ascanio*, supra, 237 Conn. 486; see also id., 485 (noting that parties did not contest that modification agreement's use of term " 'cohabitates, as defined by statute,' " referred to definition set forth in § 46b-86 [b]).

Thus, Judge Borden, in dissenting from the judgment of the Appellate Court, may well be correct in his observation that denying the trial court the remedy of modification upon cohabitation runs counter to the "broad remedial purpose" of § 46b-86 (b). *Nation-Bailey* v. *Bailey*, supra, 144 Conn. App. 333. This case is, however, purely one of contractual interpretation, and the limited use of § 46b-86 (b) in the agreement removes this matter from the ambit of the statutory construction process, insofar as we are bound to give effect to the plain and unambiguous language that the parties, each represented by counsel, used in drafting the agreement that ultimately was incorporated into the judgment of dissolution.[12] See, e.g., *Parisi* v. *Parisi*, supra, 315 Conn. 383; see also *Williams* v. *Williams*, supra, 276 Conn. 501–502 (concluding that settlement agreement "clear[ly] and unequivocal[ly]" provided that modifications upon remarriage were to be governed by § 46b-86 [b], requiring court to follow that statute despite fact that legislature intended it to govern cohabitation, and that legislative "intent has no bearing on whether parties or the dissolution court can invoke the statute for a different purpose in an agreement or decree"). "[C]ourts do not unmake bargains unwisely made. Absent other infirmities, bargains moved on calculated considerations, and whether provident or improvident, are entitled nevertheless to sanctions of the law. . . . Although parties might prefer to have the court decide the plain effect of their contract contrary to the agreement, it is not within its power to make a new and different agreement; contracts voluntarily and fairly made should be held valid and enforced in the courts."

(Emphasis omitted; internal quotation marks omitted.) *Tallmadge Bros., Inc.* v. *Iroquois Gas Transmission System, L.P.*, 252 Conn. 479, 505–506, 746 A.2d 1277 (2000). Accordingly, we conclude that the Appellate Court properly construed § 3 (B) of the agreement to require the permanent termination of the unallocated support obligation immediately upon the plaintiff's cohabitation.

The judgment of the Appellate Court is affirmed.

In this opinion ROGERS, C. J., and ZARELLA, EVELEIGH, McDONALD and ESPINOSA, Js., concurred.

[1] General Statutes § 46b-86 (b) provides: "In an action for divorce, dissolution of marriage, legal separation or annulment brought by a spouse, in which a final judgment has been entered providing for the payment of periodic alimony by one party to the other spouse, the Superior Court may, in its discretion and upon notice and hearing, modify such judgment and suspend, reduce or terminate the payment of periodic alimony upon a showing that the party receiving the periodic alimony is living with another person under circumstances which the court finds should result in the modification, suspension, reduction or termination of alimony because the living arrangements cause such a change of circumstances as to alter the financial needs of that party. In the event that a final judgment incorporates a provision of an agreement in which the parties agree to circumstances, other than as provided in this subsection, under which alimony will be modified, including suspension, reduction, or termination of alimony, the court shall enforce the provision of such agreement and enter orders in accordance therewith."

Although § 46b-86 has recently been amended by our legislature; see, e.g., Public Acts 2013, No. 13-213, § 4; those amendments have no effect on our resolution of the present appeal. In the interest of simplicity, we refer to the current revision of the statute.

[2] We granted the plaintiff's petition for certification limited to the following issue: "Did the Appellate Court correctly determine that the trial court improperly suspended the payment of unallocated alimony and support payments for four months, rather than terminating such payments in accordance with § 3 (B) of the separation agreement?" *Nation-Bailey* v. *Bailey*, 310 Conn. 953, 82 A.3d 625 (2013).

[3] In particular, the Appellate Court looked to *D'Ascanio* v. *D'Ascanio*, supra, 237 Conn. 481, "for guidance on the issue of whether the agreement's self-executing provision terminating alimony in the event of cohabitation should have been enforced by the court after it found that the plaintiff had cohabited as defined in § 46b-86 (b)." *Nation-Bailey* v. *Bailey*, supra, 144 Conn. App. 326. Observing that "[t]he language of the modification agreement in *D'Ascanio* is similar to the language in the present case, in that it defines cohabitation by reference to § 46b-86 (b)," the Appellate Court relied on this court's holding in *D'Ascanio* that, "because the modification agreement defined cohabitation by reference to § 46b-86 (b) . . . once the trial court found that the defendant had cohabited as defined in § 46b-86 (b), 'the [trial] court should have enforced the terms of the modification agreement' " by halving the weekly alimony payment "retroactive to the date the defendant began cohabiting." (Citation omitted.) Id., 327; see also id. ("[w]e therefore conclude that *D'Ascanio* governs this case and that the [trial] court improperly modified the defendant's alimony obligation pursuant to the remedies available in § 46b-86 [b], rather than terminating the plaintiff's alimony as of the initial date of cohabitation as required by § 3 [B] of the agreement, which was incorporated by reference in the judgment").

[4] Acknowledging § 3 (F) of the agreement, the Appellate Court concluded that "additional findings on issues relating to child support are necessary and that the trial court on remand should make such findings and establish any necessary orders." *Nation-Bailey* v. *Bailey*, supra, 144 Conn. App. 330; see also id., 329–30 (Connecticut court retained jurisdiction over child support matter under General Statutes § 46b-212h [a] because of parties' consent, despite fact that they had moved to California with their child and California court had changed custody of child). The Appellate Court's decision with respect to child support is not at issue in this certified appeal.

[5] Dissenting from the judgment of the Appellate Court, Judge Borden disagreed with the majority's conclusion "that the trial court improperly temporarily suspended, rather than terminated, the unallocated alimony and

support award contained in the judgment." *Nation-Bailey* v. *Bailey*, supra, 144 Conn. App. 330 (*Borden, J.*, dissenting). Judge Borden concluded that the agreement's reference to " 'cohabitation as defined by . . . § 46b-86 (b)' must, as a matter of law, be read to include the court's full panoply of powers under the statute, including, as in the present case, the power to suspend periodic alimony." Id., 331. Describing the trial court's decision to suspend, rather than permanently terminate, the alimony obligation as a "commonsense position," Judge Borden concluded that the "majority's focus on the language 'cohabitation as defined by . . . § 46b-86 (b)' as limited to the statutory definition, without also including the accompanying remedial powers of the court, finds no support in the actual language of the statute." Id., 332–33.

After disagreeing with the majority's reading of the relevant cases; see id., 334–36; Judge Borden then challenged the majority's reading of the agreement's language, stating, inter alia, that the majority "puts more weight on the word 'until' than it can bear. The use of that word in the judgment is equally consistent with the trial court's ruling in the present case, because by suspending the alimony, rather than terminating it as sought by the defendant, the word could carry a similar meaning: for example, the alimony continues 'until' cohabitation under the statute, which carries the court's range of equitable powers." Id., 336.

For additional discussion of Judge Borden's dissenting opinion, see footnote 11 of this opinion and accompanying text.

[6] The defendant also argues that there was no legal or equitable justification for the trial court to "rewrite" the agreement, observing that: (1) the agreement was fairly negotiated, without coercion or duress; (2) both parties were represented by counsel during negotiations; and (3) similar provisions are commonly used in Connecticut, and have not been found void as against public policy. Because the substantive or procedural validity of the agreement itself is not at issue in this certified appeal; see footnote 2 of this opinion; we decline to address these arguments. We similarly need not address the defendant's argument that the plaintiff, by concealing her cohabitation with Cooper from the defendant, breached the covenant of good faith and fair dealing and caused him economic harm by continuing to collect alimony for one and one-half years longer than she was entitled.

[7] To this end, the defendant further argues that the plaintiff's reliance on *Scoville* v. *Scoville*, supra, 179 Conn. 277, and *Pite* v. *Pite*, supra, 135 Conn. App. 819, is misplaced because those cases concern a trial court's power under § 46b-86 (a) to modify alimony before a terminating event, while the present case concerns a trial court's decision, in essence, to restore alimony after a terminating event under the self-executing language of the agreement, namely, cohabitation.

[8] We note at the outset that this case is procedurally similar to *D'Ascanio* v. *D'Ascanio*, supra, 237 Conn. 481, upon which the defendant relies heavily and the Appellate Court treated as "govern[ing]." *Nation-Bailey* v. *Bailey*, supra, 144 Conn. App. 327. In *D'Ascanio* v. *D'Ascanio*, supra, 486–87, the principal issue, however, was whether the trial court properly had found that cohabitation had occurred; this court determined that the parties had stipulated to the relief that a finding of cohabitation would trigger, namely, requiring the court to halve the weekly alimony payment in accordance with the terms of the settlement agreement. See also id., 488–90 (relying on stipulation at trial to conclude that trial court improperly relied on equitable conclusion regarding wife's financial needs in reducing husband's weekly alimony payment by $100, rather than $350 provided by modification agreement). We agree with Judge Borden's observation that this appeal is distinguishable from *D'Ascanio*, because that case "did not address, and cannot be read to bear on, the issue in the present case, in which there was no such stipulation and in which the parties did address the issue of whether the court had the power to suspend, rather than to terminate, the alimony." *Nation-Bailey* v. *Bailey*, supra, 336.

[9] Indeed, at oral argument before this court, the plaintiff conceded that the death of one of the parties would terminate the defendant's unallocated support obligations under the agreement.

[10] Specifically, the plaintiff does not challenge the Appellate Court's determination that the agreement used language that rendered it self-executing, thus automatically stopping the defendant's alimony obligation as soon as the plaintiff cohabited. See *Krichko* v. *Krichko*, supra, 108 Conn. App. 646–52 (concluding that provision terminating alimony " 'on the earliest of the following events to occur,' " including death and " 'remarriage or cohabitation' " of wife, without reference to § 46b-86 [b], was "self-executing upon

cohabitation," and trial court "improperly failed to conclude that the plaintiff's alimony obligation terminated as of the date the defendant began cohabiting"); *Mihalyak* v. *Mihalyak*, supra, 30 Conn. App. 522 (concluding that provision for alimony termination upon cohabitation was "automatic and self-executing," and trial court, therefore, improperly ended defendant's alimony obligation on date he filed motion for modification, rather than when cohabitation began).

Thus, we agree with the defendant's argument that the plaintiff inaptly relies on *Scoville* v. *Scoville*, supra, 179 Conn. 277, and *Pite* v. *Pite*, supra, 135 Conn. App. 819, for the proposition that the agreement's lack of a provision rendering the alimony obligation nonmodifiable as to term or amount, means that the use of the word "until" in § 3 (B) did not by itself mandate termination. See *Scoville* v. *Scoville*, supra, 280 (orders that are ambiguous as to modifiability are treated as modifiable). The plaintiff's reliance on these cases is misplaced. In *Scoville*, this court concluded that, absent an express preclusion of modification, the trial court retained the authority to extend an alimony award that originally had been for a three year fixed duration. Id. In rejecting the defendant's argument that the extension was barred, we emphasized that "[o]ur interpretation does not render superfluous the second sentence of the alimony order. Rather, we view that sentence as placing a time limitation on the alimony payments should no intervening material change in circumstances occur prior thereto." Id.; see also *Pite* v. *Pite*, supra, 825–26 (judgment language ambiguous, and thus subject to modification, when it provided for termination of alimony upon plaintiff's sixtieth birthday, but did not contain express provision rendering award nonmodifiable). In contrast to *Scoville* and *Pite*, wherein the modification motion was filed prior to the terminating event, namely, the end of the three year term in *Scoville* and the wife's sixtieth birthday in *Pite*, the self-executing language of the agreement in this case terminated the defendant's obligation automatically upon the plaintiff's cohabitation, thus divesting the trial court of any authority to modify the agreement after the occurrence of that event.

[11] Judge Borden contended in his dissenting opinion that it is improper to "focus on the language 'cohabitation as defined by . . . § 46b-86 (b)' as limited to the statutory definition, without also including the accompanying remedial powers of the court," because that construction "finds no support in the actual language of the statute." *Nation-Bailey* v. *Bailey*, supra, 144 Conn. App. 333. Quoting this court's decision in *DeMaria* v. *DeMaria*, 247 Conn. 715, 720, 724 A.2d 1088 (1999), Judge Borden observes that § 46b-86 (b) "does not even contain the word cohabitation. Instead, it uses the broader language of living with another person rather than cohabitation." (Internal quotation marks omitted.) *Nation-Bailey* v. *Bailey*, supra, 332–33. Observing that § 46b-86 (b) is "one long sentence" that begins with the "remedial powers of the court," Judge Borden then argued that it is improper to "slic[e] the purported definitional part from the remedial part." Id., 333. We respectfully disagree.

In our view, the reference in the agreement to the definitional portion of § 46b-86 (b) is significant, despite the fact that the statute does not define or even use the term "cohabitation." The word "cohabitation" is "not inflexible nor is it one of strict or narrow meaning." *DeMaria* v. *DeMaria*, supra, 247 Conn. 720; see also id., 720–22 (trial court properly relied on § 46b-86 [b] as "a matter of common-law adjudication" to interpret undefined term "cohabitation" in dissolution judgment to require "party making alimony payments prove that the living arrangement has resulted in a change in circumstances that alters the financial needs of the alimony recipient"). Indeed, in *Remillard*, we recently reviewed numerous dictionaries in determining that the word "cohabitation" was ambiguous as used in a separation agreement, because some definitions contemplated a "dwelling together of man and woman in the same place in the manner of husband and wife," while others encompassed the "broader definition" of simply living together. (Internal quotation marks omitted.) *Remillard* v. *Remillard*, supra, 297 Conn. 356; see also id., 356–57 (upholding trial court's factual determination based on extrinsic evidence and modifying phrase " 'with [an] unrelated female' " that parties intended term " 'cohabitation' " to require "sexual or romantic relationship").

These cases demonstrate that the parties' reference to § 46b-86 (b) as providing the sole definition of "cohabitation" for the agreement in this case is meaningful, particularly given ongoing debate, discussed at oral argument before this court, and exemplified by *Remillard* v. *Remillard*, supra, 297 Conn. 345, about whether "cohabitation" must include some romantic com-

ponent beyond a shared living situation. Reflecting the plaintiff's acknowledgment that the agreement was a result of a negotiated compromise, it relieved the defendant from having to prove that the plaintiff's new living situation is romantic in nature, while simultaneously protecting the plaintiff from the termination of her unallocated support based solely on her decision to live with someone, without consideration of the financial consequence of that situation.

[12] We note with interest a similar case pending before the New Jersey Supreme Court. In *Quinn* v. *Quinn*, Docket No. A-2876-11T1, 2014 WL 1909479 (N.J. Super. App. Div. May 14, 2014), the Appellate Division of the New Jersey Superior Court upheld a trial court's decision to suspend, rather than terminate, the husband's alimony obligation because of the wife's cohabitation, despite the fact that the "divorce settlement agreement provides that '[a]limony shall terminate upon . . . the [w]ife's cohabitation, per case or statutory law.'" In September, 2014, the New Jersey Supreme Court granted certification to review this aspect of the Appellate Division's decision; that certified appeal has not yet been argued or decided. See *Quinn* v. *Quinn*, 219 N.J. 631, 99 A.3d 835 (2014); see also New Jersey Judiciary, "Track Supreme Court Appeals," (last modified March 30, 2015), available at http://www.judiciary.state.nj.us/calendars/sc appeal.htm (last visited April 1, 2015) (Unofficial note stating that the issue in the certified appeal is, "[u]nder the circumstances presented, was [the] defendant entitled to terminate his alimony payments, pursuant to the divorce settlement agreement, based upon [the] plaintiff's cohabitation?").